1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

_____

INTERNATIONAL FRANCHISE          )
ASSOCIATION, INC.; CHARLES       )
STEMPLER; KATHERINE LYONS;       )
MARK LYONS; MICHAEL PARK; and    )
RONALD OH,                       )          No.
                                 )
                *Plaintiffs*,    )
        v.                       )          **COMPLAINT**
                                 )
CITY OF SEATTLE, a municipal     )
corporation; and FRED PODESTA,   )
Director of the Department of Finance )
and Administrative Services,     )
                                 )
                *Defendants*.    )
_____  )

　　　Plaintiffs, the International Franchise Association, Inc., Charles Stempler, Katherine

Lyons, Mark Lyons, Michael Park, and Ronald Oh, by and through their undersigned counsel,

hereby allege as follows:

## INTRODUCTION

　　　1.　　This is a civil action for declaratory, injunctive, and other appropriate relief

COMPLAINT - 1

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

challenging Seattle City Ordinance No. 124490 ("the Ordinance").  As explained herein, the Ordinance violates the U.S. Constitution, the Washington State Constitution, federal statutes, and state law.  Accordingly, this Court should hold that the Ordinance is unlawful and prevent it from taking effect.

2.      The Ordinance raises Seattle's minimum wage to the highest in the country.  In doing so, the Ordinance disfavors "large" employers—defined as those with more than 500 employees—over "small" employers—those with 500 or fewer employees.  As just one example, the Ordinance phases in a $15.00 per hour minimum wage much faster for "large" employers than for "small" employers.  "Large" employers must start paying $15.00 per hour in 2017 whereas "small" employers must start doing so four years later, in 2021.  The annual minimum wage increases that start in 2015 are also greater for "large" employers than for "small" employers.

3.      Plaintiffs bring this challenge because the Ordinance unfairly and irrationally discriminates against interstate commerce generally, and small businesses that operate under the franchise business model specifically.  The Ordinance treats a small, independently owned and operated franchisee as a "large" employer—no matter how few workers the small franchisee actually employs in Seattle—if the franchisees in the relevant national franchise network collectively employ more than 500 workers.

4.      Thus, under the Ordinance, a non-franchise business that has 500 employees is treated as a "small" employer whereas a small franchisee with only 5 employees is treated as a "large" employer if, as is usually the case, the franchisee is part of a network that employs more than 500 workers.  As a result, until as late as 2025, the Ordinance will impose

COMPLAINT - 2

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

significantly higher labor costs on small franchisees than on their non-franchised competitors. During that period, small franchisees are placed at an unfair competitive disadvantage—they will be forced to raise prices, reduce employees, or lower the quality of their goods and services to comply with the Ordinance to a substantially greater extent than their non-franchise counterparts.  It is foreseeable that some small franchisees in Seattle will not survive this prolonged period of unfair competition.  It is also foreseeable that some prospective franchise owners considering whether to open up a franchise location in Seattle will choose to set up shop elsewhere (or refrain from entering the fray altogether).  Moreover, the Ordinance will surely adversely impact the value of franchisees' businesses.

5. Not only is the Seattle Ordinance unwise and unfair as a matter of economic policy, it is unlawful as a legal matter.  The irrational and discriminatory treatment of interstate commerce and small franchisees vis-à-vis their non-franchise competitors violates the Commerce Clause and the Equal Protection Clause of the U.S. Constitution as well as Article I, Section 12 of the Washington State Constitution.  The Ordinance also violates numerous other constitutional provisions, statutes, and legal doctrines, as described below.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to the federal question statute, 28 U.S.C. § 1331, because this is a civil action arising under the Constitution and laws of the United States.  Plaintiffs bring this suit under 42 U.S.C. § 1983, which provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  Therefore, this Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3).  Under 28 U.S.C. § 1367(a), this Court has supplemental

COMPLAINT - 3

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

jurisdiction over Plaintiffs' claims arising under the laws of the State of Washington because those claims are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy for purposes of Article III of the U.S. Constitution.  This Court may grant declaratory and related relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because the Defendants are located in this District, private property affected by the Ordinance is situated in this District, and the events giving rise to Plaintiffs' claims occurred in this District.

**PARTIES**

8.      Plaintiff the International Franchise Association, Inc. ("IFA") is a membership organization of franchisors, franchisees, and suppliers.  Founded in 1960, the IFA is the world's oldest and largest organization representing the use of the franchise business model. The IFA's membership includes more than 1,350 franchisor companies and more than 12,000 franchisees nationwide, including in Seattle.  The IFA is incorporated under the laws of the State of Illinois.

9.      Plaintiff Charles Stempler owns Alphaprint, Inc., which does business as AlphaGraphics, a printing and marketing services business.  AlphaGraphics operates pursuant to a franchise agreement.  Alphaprint, Inc. owns, and Mr. Stempler operates, six AlphaGraphics business centers—two in Seattle, three elsewhere in Washington State, and one in California.  Mr. Stempler's six AlphaGraphics franchise locations employ a total of 90 employees.  The two Seattle locations employ 69 employees in total.  Although Mr. Stempler's AlphaGraphics franchise locations employ far less than 500 employees, the AlphaGraphics

COMPLAINT - 4

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

franchise network with which it is associated collectively employs more than 500 employees throughout the United States.  The Ordinance therefore treats Mr. Stempler's small business as a large employer.

10.     Plaintiffs Katherine Lyons and Mark Lyons own and operate BrightStar Care of North Seattle ("BrightStar Care"), a small business that provides skilled and unskilled private duty home care and home services in the City of Seattle and surrounding areas.  BrightStar Care operates pursuant to a franchise agreement.  Mr. and Mrs. Lyons' BrightStar Care franchise is incorporated under the laws of the State of Washington as MKL Services LLC. Their BrightStar Care franchise is located in the City of Seattle and employs 22 employees. Although the BrightStar Care franchise owned and operated by Mr. and Mrs. Lyons employs far less than 500 employees, the BrightStar Care franchise network with which it is associated collectively employs more than 500 employees throughout the United States.  The Ordinance therefore treats Mr. and Mrs. Lyons' small business as a large employer.

11.     Plaintiff Michael Park is the General Manager of a Comfort Inn hotel ("Comfort Inn") located in the City of Seattle.  The Comfort Inn operates pursuant to a franchise agreement.  The Comfort Inn managed by Mr. Park is owned by SEP LLC, a corporation incorporated under the laws of the State of Washington.  Mr. Park is an owner of SEP LLC. The Comfort Inn managed by Mr. Park employs 19 employees.  Although the Comfort Inn employs far less than 500 employees, the franchise network with which it is associated collectively employs more than 500 employees throughout the United States.  The Ordinance therefore treats Mr. Park's small business as a large employer.  Mr. Park is the President of the Korean American Hotel Owners Association of Washington ("KAHOA").

COMPLAINT - 5

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

12.     Plaintiff Ronald Oh is the General Manager of a Holiday Inn Express ("Holiday Inn") hotel located in the City of Seattle.  The Holiday Inn operates pursuant to a franchise agreement.  The Holiday Inn managed by Mr. Oh is owned by Advance Holdings, LLC, a corporation incorporated under the laws of the State of Washington.  The Holiday Inn that Mr. Oh manages is a family owned business and he has an ownership interest in it.  The Holiday Inn managed by Mr. Oh employs 28 employees.  Although the Holiday Inn employs far less than 500 employees, franchise network with which it is associated collectively employs more than 500 employees throughout the United States.  The Ordinance therefore treats Mr. Oh's small business as a large employer.  Mr. Oh is a KAHOA member.

13.     The Plaintiffs, and the effect of the Ordinance on them, are further described *infra* at paragraphs 60-122.

14.     Defendant the City of Seattle is a municipal corporation incorporated under the laws of the State of Washington and located in King County, Washington.  As a municipal corporation, the City of Seattle may "be sued in its corporate capacity in all courts and in all proceedings."  Wash. Rev. Code § 35.58.180.

15.     Defendant Fred Podesta is the Director of the Department of Finance and Administrative Service ("the Department"), an agency of the City of Seattle established under Seattle Municipal Code § 3.39.010.  The Department and its Director are responsible for implementing and enforcing the Ordinance.  Defendant Podesta is sued herein in his official capacity as Director of the Department.

COMPLAINT - 6

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

## FACTUAL ALLEGATIONS

### The Franchise Business Model

16.     Franchisees are like other small business owners.  Each franchisee is an independently owned and operated business.  Franchisees manage and operate all of the day-to-day aspects of their business, including making their own human resource decisions on which workers to hire, how many people to hire, the benefits they offer, and how much each of them can afford to pay their staff—just like any other small independent business owner.

17.     Franchisees independently invest in their businesses and pay the operating costs of their businesses—as would any other small business owner—including but not limited to rent, wages, taxes, and debt service.  No other party shares in these small business obligations.

18.     Franchisees are merely licensees of the franchisor's brands and methods of doing business and that is their sole difference from other independently owned small businesses.  As licensees, franchisees generally pay a continuing licensing fee for the use of the franchisor's brand and intellectual property, as well as certain services.  Even though franchisors share a common brand with their franchisees, franchisors are not owners of their franchisee's independent businesses and do not necessarily share in their profits or their losses.

19.     Franchisors and franchisees are separate corporations.  A franchisee is not the employee of the franchisor.  And the employees of a franchisee are not employees of the franchisor.

20.     In its regulations, the U.S. Small Business Administration recognizes that a franchisee and its franchisor generally are separate and independent corporate entities provided

COMPLAINT - 7

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

that the franchisee "has the right to profit from its efforts and bears the risk of loss commensurate with ownership."  13 C.F.R. § 121.103(i).

21.     Franchising benefits consumers by ensuring that they have access to products and services with which they are familiar at a level of quality and safety that they expect because of the reputation of the franchise brand.

22.     Franchising also benefits the economy more broadly.  The franchise business model has served as an engine for growth and job creation since it was first conceived.  It has a proven track record as one the nation's most prolific resources for job and management training. And franchisees are frequently the first employer of the young and disadvantaged when they enter the labor market.

<u>Minimum Wage Laws in the United States</u>

23.     Under federal law, the minimum wage is $7.25 per hour.  In his State of the Union address in 2013, President Obama proposed raising the federal minimum wage to $9.00 per hour.  Congress did not adopt the proposal.  In his 2014 address, the President proposed a federal minimum wage of $10.10 per hour.  Congress has not adopted this proposal.

24.     The statewide minimum wage in the State of Washington is $9.32 per hour—higher than the minimum wage of any other State, the District of Columbia, or any U.S. territory.

25.     The Seattle Ordinance will raise the minimum wage in the City of Seattle to $15.00 per hour—the highest minimum wage in the United States—by the year 2017 for "large" employers and 2021 for "small" employers.

<u>Seattle City Ordinance No. 124490</u>

COMPLAINT - 8

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

26.     On June 2, 2014, the City Council passed Council Bill No. 118098.

27.     On June 3, 2014, the Mayor signed Council Bill 118098 into law and it became City Ordinance No. 124490.

28.     A true and correct copy of City Ordinance No. 124490 is attached to this Complaint as Exhibit A.

29.     The Ordinance phases in a substantially increased hourly minimum wage over time according to various schedules, and then tethers that wage to inflation—in 2018 for "large" employers and 2025 for "small" employers.

30.     Under the Ordinance, initial minimum wage increases take effect on April 1, 2015.

31.     The Ordinance treats "large" employers and franchisees differently from "small" employers, expressly and substantially favoring "small" non-franchised employers. The Ordinance discriminates against small franchisees that are similarly situated to small employers in all material respects.

32.     The Ordinance finds and declares that "a benchmark of 500 employees is appropriate in distinguishing between larger and smaller employees in recognition that smaller businesses and not-for-profits would face particular challenges in implementing a higher minimum wage."

33.     The Ordinance defines a "Schedule 1 Employer" as "all employers that employ more than 500 employees in the United States, regardless of where those employees are employed in the United States."

34.     The Ordinance also defines a "Schedule 1 Employer" as "all franchisees

COMPLAINT - 9

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

associated with a franchisor or network of franchises with franchisees that employ more than 500 employees in aggregate in the United States."

36.     The Ordinance defines a "Schedule 2 Employer" as "all employers that employ 500 or fewer employees in the United States regardless of where those employees are employed in the United States."

36.     The Ordinance also states that "Schedule 2 employers do not include franchisees associated with a franchisor or network of franchises with franchisees that employ more than 500 employees in aggregate in the United States."

37.     The Ordinance establishes a rubric "for purposes of determining whether a non-franchisee employer is a Schedule 1 employer or a Schedule 2 employer" when that employer is an "integrated enterprise."  The Ordinance requires consideration of the "degree of interrelation between the operations of multiple entities," the "degree to which the entities share common management," whether there is "centralized control of labor relations," and "the degree of common ownership or financial control over the entities."  The Ordinance also adopts a presumption that "separate legal entities, which may share some degree of interrelated operations and common management with one another, shall be considered separate employers for purposes" of ascertaining whether an employer is "large" or "small."

38.     The Ordinance defines any business that is "substantially associated with a trademark, service mark, trade name, advertising, or other commercial symbol; designating, owned by, or licensed by the grantor or its affiliate" as a "Franchise."

39.     The Ordinance defines a "Franchisee" as a "person to whom a franchise is offered or granted."  The Ordinance defines a "Franchisor" as a "person who grants a franchise

COMPLAINT - 10

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

to another person."

40. The Ordinance phases in per hour minimum wage targets and increases the minimum wage faster for franchisees than for Schedule 2 Employers.

41. Schedule 1 Employers must pay a minimum wage of $11.00 per hour as of April 1, 2015. On January 1, 2016, the minimum wage for Schedule 1 Employers raises to $13.00 per hour. On January 1, 2017, the $15.00 per hour minimum wage takes effect for Schedule 1 Employers. In 2018 and every year thereafter the Ordinance increases the minimum wage annually based on the rate of inflation.

42. In contrast, the minimum wage increases for Schedule 2 Employers are phased in more slowly according to the following schedule:

| Year | Min. Wage |
| --- | --- |
| 2015 | $10.00 |
| 2016 | $10.50 |
| 2017 | $11.00 |
| 2018 | $11.50 |
| 2019 | $12.00 |
| 2020 | $13.50 |
| 2021 | $15.00 |
| 2022 | $15.75 |
| 2023 | $16.50 |
| 2024 | $17.25 |

In 2025 and every year thereafter the minimum wage shall be increased annually based on the rate of inflation.

43. Under the Ordinance, franchisees must start paying the $15.00 per hour minimum wage in 2017 while their Schedule 2 competitors get an extra four years, until 2021,

COMPLAINT - 11

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

to start paying that wage.

<u>The Ordinance's Unfair, Discriminatory, and Irrational Treatment of Franchises</u>

44.    The Seattle Ordinance unfairly and irrationally discriminates against small, independently owned and operated franchisees.

45.    The Ordinance draws a distinction between large employers and small employers, finding and declaring that "a benchmark of 500 employees is appropriate in distinguishing between larger and smaller employees in recognition that smaller businesses and not-for-profits would face particular challenges in implementing a higher minimum wage." But the Ordinance does not apply that "appropriate" benchmark to small, independently owned and operated franchisees, which face the same "challenges in implementing a higher minimum wage."

46.    Under the Ordinance, a small franchisee, no matter how few workers it actually employs, is deemed a large employer if the franchise network collectively employs more than 500 workers in the United States.

47.    The Ordinance therefore leads to absurd results:  A non-franchise company with 500 workers in Seattle is treated as a Schedule 2 Employer, whereas a small franchise owner with only 5 workers is treated as a Schedule 1 Employer if the franchise network employs more than 500 workers in total.

48.    As the *Seattle Times* observed in a May 30, 2014 editorial, "the Seattle minimum wage proposal, as it now stands, defines nearly all franchises as big businesses, giving them only three to four years to raise all workers['] wages to $15 an hour.  Small businesses (defined as fewer than 500 employees) get up to seven years, cushioning [the]

COMPLAINT - 12

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

financial blow and offering them a temporary advantage over competitors.…  It effectively discriminates against a business model—franchises—by giving non-franchises a slower phase-in."  *Redefine franchises under Seattle's minimum-wage proposal*, Seattle Times (May 30, 2014), http://bit.ly/1oNHplF.  It also "punishes locally-owned franchises in a wrongheaded pursuit" of franchisors.  *Id.*

49.    The Ordinance aggregates employees of different franchisee companies as if they all worked for a single corporation—contrary to state law recognizing that separate corporations are distinct legal entities and must be treated as such.

50.    The Ordinance provides that, for purposes of determining whether an employer is a Schedule 1 or Schedule 2 employer, "separate entities that form an integrated enterprise shall be considered a single employer … where a separate entity controls the operation of another entity," but this test applies only to a "non-franchisee employer."  Under the Ordinance, if a small franchisee is associated with a franchise network that employs more than 500 workers, the small franchisee is deemed a Schedule 1 Employer even if it is not part of an "integrated enterprise" as so defined.

51.    The Ordinance also discriminates against small franchisees by putting them at a competitive disadvantage relative to Schedule 2 Employers until as late as 2025.  During that time period, small franchisees will face greater labor costs than their similarly situated non-franchised competitors.

52.    In 2015, those franchisees that are treated as Schedule 1 Employers must pay $11.00 per hour while Schedule 2 Employers must pay $10.00 per hour, a difference of $1.00 per hour.  In 2016, such franchisees must pay $13.00 per hour while Schedule 2 Employers

COMPLAINT - 13

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

must pay $10.50, a difference of $2.50 per hour.  In 2017, such franchisees must pay $15.00 per hour while Schedule 2 Employers must pay $11.00, a $4.00 per hour differential.  Such franchisees also face wage differentials through 2025 so long as inflation outstrips the City's Schedule 2 employer wage increase schedule (as it surely will).

<u>Legislative History of the Ordinance</u>

53.     On information and belief, the provisions of the Ordinance that treat small franchise businesses as large employers were inserted in the draft legislation proposed by the Mayor at the insistence of union officials who oppose the franchise business model.  The Mayor and the City Council acceded to the union's demand even though such provisions are unfair and bad for small franchise businesses.

54.     Some of the legislative debate over the franchise provisions reflected a lack of understanding of franchising.  At a City Council hearing, one member of the Council stated that "In order to be a franchisee, you have to be very, very wealthy."  That statement is false. Franchisees often must take out large loans in order to start their businesses.  Profit margins in many sectors are small.

<u>Provisions of the Ordinance Relating to Employee Benefits Plans</u>

55.     The Ordinance includes provisions that relate to employee medical benefits plans.

56.     The Ordinance's minimum wage increases are phased in more slowly for "Schedule 1 Employers that pay toward an individual employee's medical benefits plan."  The Ordinance defines a "medical benefits plan" as "a silver or higher level essential health benefits package as defined in 42 U.S.C. § 18022, or an equivalent plan that is designed to

COMPLAINT - 14

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

provide benefits that are actuarially equivalent to 70 percent of the full actuarial value of the benefits provided under the plan, whichever is greater."

57.     Schedule 1 Employers that pay toward a silver, gold, or platinum plan receive an extra year, until 2018, to start paying the $15.00 per hour minimum wage and are subject to smaller minimum wage increases in 2016 and 2017.

58.     Schedule 1 Employers, including franchisees, that pay toward a bronze plan or do not pay toward a medical benefits plan do not get the benefit of the extra year or the smaller increases.

59.     The employee benefits plans to which the Ordinance refers are covered and regulated by the Employee Retirement Income Security Act ("ERISA").

<u>The IFA and the Individual Plaintiffs</u>

60.     The Ordinance applies to and adversely affects members of the IFA that employ workers in Seattle.  The Ordinance directly applies to and adversely affects Plaintiffs Charles Stempler, Katherine Lyons, Mark Lyons, Michael Park, and Ronald Oh ("the Individual Plaintiffs").

*The International Franchise Association*

61.     The International Franchise Association is a membership organization of franchisors, franchisees, and suppliers.

62.     In the City of Seattle, there are approximately 600 franchisees that own 1,700 locations employing 19,000 workers.

63.     Some of IFA's members are franchisors or franchisees that do business and employ workers in Seattle.  These members are subject to and adversely affected by the Seattle

COMPLAINT - 15

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

Ordinance, which raises the minimum wage they must pay to their employees in Seattle.

64.     Some of IFA's members are franchisors whose corporate headquarters are located in Seattle and who have employees in Seattle. These IFA members must comply with the Ordinance and must pay their employees in Seattle no less than the minimum wage prescribed by the Ordinance.

65.     Some of IFA's members are franchisees that own and operate franchise locations in Seattle. Some of those IFA members employ 500 or fewer employees in Seattle but are associated with a franchise network that employs more than 500 employees in aggregate in the United States. These IFA members are treated as Schedule 1 Employers under the Ordinance and therefore are disadvantaged vis-à-vis their non-franchised competitors.

66.     Some of IFA's members are franchisors that have franchise agreements with franchisees in Seattle. Some of those franchisees employ 500 or fewer employees but are associated with a franchise network that employs more than 500 employees in aggregate in the United States. These Seattle franchisees of IFA members are treated as Schedule 1 Employers under the Ordinance and therefore are disadvantaged vis-à-vis their non-franchised competitors.

67.     Some IFA members and some franchisees of IFA members pay toward employee medical benefits plans and others do not. Those that do pay toward plans at the bronze or higher levels.

*Charles Stempler*

68.     Charles Stempler is a resident of the City of Seattle. He and his family have lived in Seattle for 20 years.

COMPLAINT - 16

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

69.     Mr. Stempler is a small business owner.  Mr. Stempler owns Alphaprint, Inc., which does business as AlphaGraphics, a printing and marketing services business.

70.     AlphaGraphics operates pursuant to a franchise agreement.

71.     Mr. Stempler operates six AlphaGraphics business centers, five in Washington State and one in California.  Of AlphaGraphics' five Washington locations, two are located in Seattle.

72.     Mr. Stempler purchased an existing AlphaGraphics store in May 2001.  To finance the purchase, he invested $100,000 of his personal savings and took out Small Business Administration ("SBA") loans.

73.     In connection with his purchase of that store, Mr. Stempler executed a Franchise Agreement with the franchisor, AlphaGraphics, Inc.

74.     AlphaGraphics, Inc.'s world headquarters are located in Salt Lake City, Utah.

75.     AlphaGraphics, Inc. has franchise agreements with 216 franchisees that own and operate 245 business centers in the United States, the vast majority of which are located outside of Seattle and Washington State.  These 245 business centers collectively employ about 2,000 people in the United States.

76.     Alphaprint, Inc. is incorporated under the laws of the State of Washington.

77.     Alphaprint, Inc. is not owned in any part by the franchisor.

78.     Mr. Stempler's five AlphaGraphics stores in Washington employ a total of 85 employees, all of whom are paid more than the current state minimum wage.

79.     Mr. Stempler's two AlphaGraphics locations in Seattle employ 69 workers, of whom 58 are paid by the hour.  Mr. Stempler's 58 hourly employees in Seattle are now paid

COMPLAINT - 17

between $11.50 per hour and $28.00 per hour.  Thirteen of those 58 hourly employees are now paid less than $15.00 per hour.

80.     Mr. Stempler provides health care, dental care, vision care, life insurance, long term disability insurance, and 401K benefits for all his employees.  The franchisor does not contribute to these benefits.

81.     Mr. Stempler assists non-profit organizations in the Puget Sound area by providing free and discounted printing services at his AlphaGraphics stores.  Mr. Stempler has assisted 163 non-profit organizations in this way, in addition to making direct financial contributions.

82.     In 2013, the Puget Sound Business Journal selected AlphaGraphics as one of its "Top 75 Corporate Philanthropists."  In 2014, the Puget Sound Business Journal included AlphaGraphics on a list of top 25 corporate philanthropists.  AlphaGraphics received similar accolades in 2010, 2011, and 2012.

83.     From 2004 to 2010, Mr. Stempler served as Chairman of the Board of the Seattle Humane Society.  For the past 12 years, Mr. Stempler has served as the President of the Board of the Washington State Holocaust Education Resource Center, a non-profit organization that helps public and private school teachers in Washington educate their students about the Holocaust and genocide.

84.     Although Mr. Stempler's AlphaGraphics franchise locations employ far less than 500 employees, the AlphaGraphics franchise network with which it is associated collectively employs more than 500 employees throughout the United States.  The Ordinance therefore treats AlphaGraphics as a Schedule 1 Employer.

COMPLAINT - 18

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

85.     AlphaGraphics has 13 employees in Seattle who are now paid less than $15.00 per hour.  Under the Ordinance, the minimum wage for all of AlphaGraphics' employees will be $11.00 as of April 1, 2015, $13.00 as of January 1, 2016, and $15.00 as of January 1, 2017.

86.     The minimum wage hikes mandated by the Ordinance for employees in the City of Seattle will cause AlphaGraphics to raise the hourly wages of employees outside of Seattle in order to maintain an equitable pay structure between the AlphaGraphics locations.

87.     The minimum wage hikes mandated by the Ordinance will cause AlphaGraphics to raise the hourly wages of employees who are paid more than the minimum wage in order to maintain an equitable pay structure within each AlphaGraphics location.

88.     AlphaGraphics has numerous competitors in Seattle that are not franchise businesses.

89.     The Ordinance will cause AlphaGraphics to be at a competitive disadvantage relative to its non-franchise competitors because, between April 1, 2015, and January 1, 2021, a higher minimum wage will apply to AlphaGraphics than to its non-franchise competitors, and therefore AlphaGraphics will face higher wage costs relative to those competitors.

*Katherine Lyons and Mark Lyons*

90.     Katherine Lyons and her husband, Mark Lyons, own and operate BrightStar Care of North Seattle ("BrightStar Care"), a small business that provides skilled and unskilled private duty home care and home services in the City of Seattle and surrounding areas.

91.     BrightStar Care operates pursuant to a franchise agreement.

92.     Mr. and Mrs. Lyons purchased their BrightStar Care franchise in February 2012.  They invested some $200,000 of their personal savings and borrowed $235,600 from the

COMPLAINT - 19

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

SBA.  Their SBA loan is secured by a mortgage on their house.

93.     In February 2012, Mr. and Mrs. Lyons executed a Franchise Agreement with the franchisor, BrightStar Franchising, LLC, an Illinois limited liability company with its principal place of business in Gurnee, Illinois.

94.     BrightStar Franchising, LLC, has franchise agreements with approximately 200 franchisees that own and operate 260 franchise locations and employ 16,000 nurses and caregivers in the United States.  All but three of the locations franchised by BrightStar Financing, LLC are located outside of the State of Washington.

95.     The BrightStar Care business owned by Mr. and Mrs. Lyons is incorporated under the laws of the State of Washington as MKL Services LLC.

96.     MKL Services LLC is not owned in any part by the franchisor.

97.     Mr. and Mrs. Lyons have never received any salary or taken any profits from BrightStar Care.

98.     BrightStar Care's office is located in the City of Seattle.

99.     BrightStar Care employs Certified Nursing Assistants, Licensed Practical Nurses, and Registered Nurses.

100.    BrightStar Care employs 22 employees in the City of Seattle, of whom 15 are paid by the hour.  All of BrightStar Care's hourly employees are paid more the current state minimum wage.

101.    BrightStar Care now pays its 15 hourly employees between $12.00 per hour and $35.00 per hour.  Fourteen of BrightStar Care's current hourly employees are paid less than $15.00 per hour.

COMPLAINT - 20

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

102.   Although the BrightStar Care franchise owned and operated by Mr. and Mrs. Lyons employs far less than 500 employees, BrightStar Care is associated with a franchise network that collectively employs more than 500 employees.  The Ordinance therefore deems BrightStar Care a Schedule 1 Employer.

103.   BrightStar Care has hundreds of competitors in its market, including non-franchise competitors.

104.   The Ordinance will cause BrightStar Care to be at a competitive disadvantage relative to its non-franchise competitors because, between April 1, 2015, and January 1, 2021, a higher minimum wage will apply to BrightStar Care than to its non-franchise competitors, and therefore BrightStar Care will face higher wage costs relative to those competitors.

*Michael Park*

105.   Plaintiff Michael Park is the General Manager of a Comfort Inn hotel ("the Comfort Inn") located in the City of Seattle.  The Comfort Inn operates pursuant to a franchise agreement.

106.   The Comfort Inn is owned by SEP LLC, a corporation incorporated under the laws of the State of Washington.  Mr. Park and his wife own SEP LLC.

107.   Mr. Park is the President of the Korean American Hotel Owners Association of Washington ("KAHOA").  KAHOA is in the process of changing its name to the Korean American Hotel Owners Association of Northwest.

108.   The KAHOA has 56 members who own and operate approximately 100 hotels in Washington and Oregon.  Approximately 70-80% of KAHOA's members own and operate franchise hotels.

COMPLAINT - 21

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

109.    The Comfort Inn has 19 employees.  Eighteen of those employees are paid by the hour.

110.    All of the Comfort Inn's 18 hourly employees are paid more the current state minimum wage.  Those 18 employees are paid between $9.75 and $12.00 per hour.

111.    Because the Comfort Inn is associated with other franchise businesses that collectively employ more than 500 employees, the vast majority of whom are employed outside Seattle and Washington State, the Ordinance deems the Comfort Inn a Schedule 1 Employer.

112.    The Comfort Inn faces competition, including from independent hotels that the Ordinance classifies as Schedule 2 Employers.

113.    The Ordinance will cause the Comfort Inn to be at a competitive disadvantage relative to its independent hotel competitors because, between April 1, 2015, and January 1, 2021, a higher minimum wage will apply to the Comfort Inn than to its independent hotel competitors, and therefore the Comfort Inn will face higher wage costs relative to those non-franchised competitors.

*Ronald Oh*

114.    Plaintiff Ronald Oh is the General Manager of a Holiday Inn Express hotel ("the Holiday Inn") located in the City of Seattle.  The Holiday Inn operates pursuant to a franchise agreement.

115.    The Holiday Inn is owned by Advance Holdings, LLC, a corporation incorporated under the laws of the State of Washington.

COMPLAINT - 22

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

116.    The Holiday Inn is family-owned business.  Mr. Oh has an ownership interest in the Holiday Inn.

117.    Mr. Oh is a member of the Korean American Hotel Owners Association of Washington.

118.    The Holiday Inn has 28 employees.  Twenty-two of those employees are paid by the hour.

119.    All of the Holiday Inn's 22 hourly employees are paid more the current state minimum wage.  Those 22 employees are paid between $9.50 and $12.00 per hour.

120.    Because the Holiday Inn is associated with other franchise businesses that collectively employ more than 500 employees, the vast majority of whom are employed outside of Seattle and Washington State, the Ordinance deems the Holiday Inn a Schedule 1 Employer.

121.    The Holiday Inn faces competition, including from independent hotels that the Ordinance classifies as Schedule 2 Employers.

122.    The Ordinance will cause the Holiday Inn to be at a competitive disadvantage relative to its independent hotel competitors because, between April 1, 2015, and January 1, 2021, a higher minimum wage will apply to the Holiday Inn than to its independent hotel competitors, and therefore the Holiday Inn will face higher wage costs relative to those non-franchised competitors.

### COUNT I
### (Violation of the Commerce Clause of the U.S. Constitution)

123.    Plaintiffs reallege and incorporate by reference the allegations contained in all

COMPLAINT - 23

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

of the preceding paragraphs.

124.    The Commerce Clause of the U.S. Constitution provides that "Congress shall have Power … [t]o regulate Commerce … among the several States."  U.S. Const. art. I, § 8, cl 3.  That affirmative grant of power to Congress also limits the power of state and local governments to pass legislation affecting interstate commerce.

125.    The Commerce Clause prohibits state laws that discriminate against interstate commerce and engage in economic protectionism, *i.e.*, measures designed to benefit local economic interests by burdening out-of-state competitors.  *See*, *e.g.*, *W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 201-02 (1994); *Healy v. Beer Inst.*, 491 U.S. 324, 332-33 (1989); *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 992 (9th Cir. 2002); *Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 638 (9th Cir. 1993).

126.    The Ordinance discriminates against interstate commerce.  It preferences small local employers and prejudices other small employers merely because of their affiliation with out-of-state operations, namely franchise networks.

127.    The Ordinance is a form of protectionist legislation prohibited by the Commerce Clause.  It burdens out-of-state economic interests by increasing their labor costs vis-à-vis similarly situated local competitors.  The Ordinance classifies an employer as a Schedule 1 Employer or a Schedule 2 Employer based on the number of workers it employs.  If the employer has more than 500 employees, it is a Schedule 1 Employer and is treated less favorably than a Schedule 2 Employer.  But the employee count for franchisees includes out-of-state workers that are employed by separate companies.  Thus, the Ordinance punishes franchisees based on their connection to other companies operating outside of Seattle and the

COMPLAINT - 24

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

State of Washington.  The Ordinance thereby impermissibly discourages such employers from doing business in Seattle and competing against local industry.

## COUNT II
### (Violation of the Equal Protection Clause of the U.S. Constitution and Article XI, Section 11 of the Washington State Constitution)

128.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

129.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

130.    As the Supreme Court has held, "arbitrary and irrational discrimination violates the Equal Protection Clause under even [the] most deferential standard of review."  *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 83 (1988).  Indeed, providing "a shield against arbitrary classifications" is the "core concern" of the Equal Protection Clause.  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008).

131.    The Ordinance arbitrarily and irrationally discriminates against small franchisees, *i.e.*, those that employ 500 or fewer workers but are associated with a franchise network that collectively employs more than 500 workers.  The Ordinance treats small franchisees the same as large employers that employ more than 500 workers.  The Ordinance leads to absurd results:  For example, a small franchisee employing only 5 workers in Seattle is treated as a Schedule 1 Employer if, as is usually the case, the franchise network employs more than 500 workers whereas a non-franchise company employing 500 workers in Seattle is treated more favorably, as a Schedule 2 Employer.

COMPLAINT - 25

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

132.     Irrational and discriminatory in application, the Ordinance is irrational on its face in at least two respects.  First, the Ordinance finds and declares that "a benchmark of 500 employees is appropriate in distinguishing between larger and smaller employees in recognition that smaller businesses … would face particular challenges in implementing a higher minimum wage."  Counting small franchisees with only a handful of employees as "large" employers is irreconcilable with that finding.  Second, the Ordinance adopts a presumption that "separate legal entities, which may share some degree of interrelated operations and common management with one another, shall be considered separate employers for purposes" of ascertaining whether an employer is "large" or "small."  No such presumption is necessary under the Ordinance as regards franchisees—such businesses are wholly independently owned and operated.  Nonetheless, and despite the Ordinance's treatment of "separate legal entities," franchisees are defined into a status—being a "large" employer—that is entirely unjustifiable.

133.     Under Article XI, Section 11 of the Washington State Constitution, a city may enact an ordinance provided that it is a reasonable exercise of the police power.  The Seattle Ordinance violates this provision because it is clearly unreasonable, arbitrary, or capricious, as alleged herein.

## COUNT III
### (Violation of Article I, Section 12 of the Washington State Constitution)

134.     Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

135.     Article I, Section 12 of the Washington State Constitution provides:  "No law

COMPLAINT - 26

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

136.     The Ordinance violates Article I, Section 12.  The Ordinance grants some corporations "an exemption from a regulatory law that has the effect of benefiting certain businesses at the expense of others."  *Ockletree v. Franciscan Health Sys.*, 179 Wash.2d 769, 781 (2014) (en banc) (quoting *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wash.2d 570, 607 (2008) (en banc)).  The Ordinance grants a non-franchise corporation that employs 500 or fewer employees the privilege or immunity of a slower phase-in of a substantially increased hourly minimum wage.  That same privilege or immunity is not extended to a franchisee corporation with an equal number of employees.  A franchise corporation qualifies for the privilege or immunity only if the franchise network collectively employs 500 or fewer employees.  Under the Ordinance, franchise corporations bear "greater expense or costs" than non-franchise corporations.  *Ockletree*, 179 Wash. 2d at 782.  The Ordinance "offend[s] the anticompetitive concerns underlying article I, section 12."  *Id.*

## COUNT IV
### (Lanham Act Preemption; Supremacy Clause)

137.     Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

138.     The Supremacy Clause of the U.S. Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land."  U.S. Const., art. VI, cl. 2.

COMPLAINT - 27

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

139.    Under the Supremacy Clause, any state or local law that conflicts with federal law is preempted and is null and void.

140.    The Lanham Act "includes an unusual, and extraordinarily helpful, detailed statement of the statute's purposes." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1389 (2014) (quotation marks omitted).

141.    One of the Lanham Act's express purposes is "to protect registered marks used in [interstate] commerce from interference by State, or territorial legislation." 15 U.S.C. § 1127.

142.    Any state law that is inconsistent with or that frustrates the objectives of the Lanham Act is preempted. *See Mobil Oil Corp. v. Va. Gasoline Marketers & Auto Repair Ass'n*, 34 F.3d 220, 226 (4th Cir. 1994) (citing *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368 (1986)).

143.    Under the Lanham Act, a trademark holder has the right to control the quality of the goods or the services sold under its trademark. The Lanham Act preempts any state law provision inconsistent with the trademark holder's right of quality control. When a state law significantly interferes with the trademark holder's right to maintain the quality of the goods or services sold under its trademark, the state law is preempted.

144.    Franchisees operate under trademarks protected by the Lanham Act. The Ordinance significantly interferes with a franchisor's right to maintain quality control. The Ordinance exposes small franchisees to unfair competition during the six-year period between 2015 and 2021. Their labor costs will be much greater in that period than the labor costs of non-franchise business. As a result, franchisees will face pressure to raise prices, reduce

COMPLAINT - 28

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

workers, and reduce the quality of their goods and services to a substantially greater degree than their competitors.

145.    The Ordinance specifically makes use of a trademark a factor subjecting a company to unfavorable treatment.

146.    The Ordinance expressly defines any business that is "substantially associated with a trademark, service mark, trade name, advertising, or other commercial symbol; designating, owned by, or licensed by the grantor or its affiliate" as a "Franchise."

147.    This local effort to attribute unfavorable consequences to the exercise of a federal right is squarely preempted by the Supremacy Clause and the preemptive effect of the Lanham Act.

**COUNT V**
**(ERISA Preemption; Supremacy Clause)**

148.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

149.    ERISA contains an express preemption provision that "supercede[s] any and all State laws" that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA's preemption provision applies to the laws of any political subdivision of a state. *See id.* § 1144(c)(2).

150.    State or local laws "relate to" an employee benefit plan, and hence are preempted, if the laws have a connection with or reference to such a plan.

151.    The Ordinance relates to employee benefit plans. The Ordinance has a connection with and reference to employee benefit plans.

COMPLAINT - 29

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

152.    The Ordinance imposes different legal requirements on employers based on whether they pay toward a medical benefits plan and the plan level they pay toward.

153.    The Ordinance gives favorable treatment to large employers that pay toward a silver, gold, platinum or equivalent health benefits plan.  For such employers, the substantially increased minimum wage is phased-in more slowly.  For example, such employers receive an extra year, until 2018, to start paying a $15.00 per hour minimum wage.

154.    The Ordinance penalizes large employers that pay toward a bronze plan or do not pay toward a medical benefits plan.  Such employers, for instance, do not get the advantage of the slower phase-in of the $15.00 per hour minimum wage.

155.    The Ordinance frustrates ERISA's objective of uniform plan administration.  An employer with employees in Seattle and elsewhere that currently offers all of its employees a bronze plan must offer its Seattle employees a silver or higher level plan or else it will receive disfavorable treatment under the Ordinance.  Such an employer cannot offer a single bronze level plan to all of its employees without being penalized by the City of Seattle.

## Count VI
### (Violation of State Corporation Law)

156.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

157.    Under the corporation law of the State of Washington, separate corporations are and must be treated as distinct legal entities.  The law does not allow separate corporations to be treated as one absent some serious and deliberate abuse of the corporate form, such as fraud.

158.    The Ordinance violates this doctrine of corporate separateness.  The Ordinance

COMPLAINT - 30

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

treats different franchisee corporations as if they were a single corporation. The Ordinance aggregates all of the workers employed by the separate corporations that make up a franchise network for purposes of classifying a franchisee corporation as a Schedule 1 or Schedule 2 Employer. Even if a franchisee has only 5 employees, the Ordinance treats that corporation as a Schedule 1 Employer if the other corporations in the franchise network collectively employ more than 500 workers.

159.    Because the City of Seattle's Ordinance conflicts with the corporation law of the State of Washington, the Ordinance is null and void.

**Count VII**
**(Violation of the Contracts Clause of the U.S. Constitution**
**and the Washington State Constitution)**

160.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

161.    The Contracts Clause of the U.S. Constitution provides: "No State shall … pass any … Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10.

162.    Article I, Section 23 of the Washington State Constitution provides: "No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall ever be passed."

163.    Franchisees and franchisors enter into franchise agreements that establish contractual rights and obligations.

164.    The Ordinance will "operate[ ] as a substantial impairment of [the] contractual relationship" between franchisees and franchisors. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). The agreements between franchisees and franchisors comprehensively define the rights and obligations of each party and the Ordinance will make it

COMPLAINT - 31

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

difficult—if not impossible—for the franchisees to continue to meet their obligations in terms of operating hours and product quality due to the increased costs imposed by the Ordinance and the Ordinance's disparate treatment of franchisees and their non-franchised competitors.

### Count VIII
### (Violation of the Freedom of Speech and Association
### Under the First Amendment to the U.S. Constitution)

165.   Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

166.   The First Amendment to the U.S. Constitution provides in part that "Congress shall make no law … abridging the freedom of speech … or the right of the people to peaceably assemble …."

167.   The First Amendment applies to state action through the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

168.   The First Amendment protects commercial speech and freedom of association.

169.   Commercial speech "is a form of expression protected by the Free Speech Clause of the First Amendment," *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2659 (2011), and the Ordinance will curtail franchisee commercial speech in at least three important respects. First, by increasing the labor costs of franchisees, the Ordinance will reduce the ability of franchisees to dedicate funding to the promotion of their businesses and brands.  Second, the increased labor costs the Ordinance mandates may cause some franchisees to shut their doors, reducing the amount of relevant commercial speech they engage in to zero.  Third, and relatedly, the Ordinance will likely cause potential franchisees to forgo purchasing a franchise because of the associated higher operation costs, again eliminating all associated speech.

COMPLAINT - 32

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

170.    For much the same reasons, the Ordinance abridges the freedom of association. The Ordinance will force many franchisees to cease their association with franchisors or to refrain from engaging in such association.  The "freedom of association" is "protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference" such as that created by the Ordinance.  *Bates v. City of Little Rock*, 361 U.S. 516, 522–523 (1960).

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully pray that this Court:

1.    Enter Judgment in their favor;

2.    Declare that the Ordinance is unconstitutional under the U.S. Constitution and the Washington State Constitution; is preempted by the Lanham Act and ERISA pursuant to the Supremacy Clause of the U.S. Constitution; and violates the law of the State of Washington;

3.    Issue preliminary and permanent injunctions enjoining the Ordinance and enjoining Defendants, including Defendant Podesta's subordinates, from implementing or enforcing the Ordinance;

4.    Enter an order prohibiting retaliation against the Individual Plaintiffs for bringing this legal challenge to the Ordinance;

5.    Award Plaintiffs their costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b) and any other applicable law; and

6.    Award Plaintiffs any further relief that is just and appropriate, including but not limited to any necessary or proper relief authorized by 28 U.S.C. § 2202.

COMPLAINT - 33

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090

Respectfully submitted,


/s Paul D. Clement
Paul D. Clement*
Viet D. Dinh*
H. Christopher Bartolomucci*
BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090
pclement@bancroftpllc.com
vdinh@bancroftpllc.com
cbartolomucci@bancroftpllc.com
zhudson@bancroftpllc.com
wlevi@bancroftpllc.com
* *Pro hac vice* applications pending


/s David J. Groesbeck, WSBA No. 24749
DAVID J. GROESBECK, P.S.
1716 Sylvester St. SW
Olympia, WA  98501
 (360) 358-3224

313 W. Riverside Ave.
Spokane, WA 99201
(509) 747-2800
david@groesbecklaw.com

*Counsel for Plaintiffs*
*The International Franchise Association,*
*Inc., Charles Stempler, Katherine Lyons,*
*Mark Lyons, Michael Park, and Ronald*
*Oh*


COMPLAINT - 34

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC  20036
(202) 234-0090