1

Honorable Richard A. Jones

2

3

4

5

6          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
7                    AT SEATTLE

8   INTERNATIONAL FRANCHISE              )
    ASSOCIATION, INC.; CHARLES           )
9   STEMPLER; KATHERINE LYONS;           )   No.     14-cv-00848RAJ
    MARK LYONS; MICHAEL PARK; and        )
10  RONALD OH,                           )   **OPPOSITION TO PLAINTIFFS'**
                                         )   **MOTION FOR A LIMITED**
11                       Plaintiffs,     )   **PRELIMINARY INJUNCTION**
                                         )
12           vs.                         )   Noting Date: October 10, 2014
                                         )
13  THE CITY OF SEATTLE, a municipal     )
    corporation; and FRED PODESTA,       )
14  Director of the Department of Finance and )
    Administrative Services,             )
15                                       )
                         Defendants.     )
16  _____  )

17

18

19

20

21

22

23

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848)

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................... 3

LEGAL STANDARD ................................................................................................. 6

ARGUMENT ............................................................................................................... 6

I.   The Ordinance Does Not Constitute Protectionism Violating The Dormant Commerce Clause. ........................................................................................... 6

    1.   The Dormant Commerce Clause Standard Requires Deference To The State's Legislative Authority. ...................................................................... 7

    2.   The IFA Has Not Demonstrated Discriminatory Effects. .......................... 8

    3.   The IFA Cannot Demonstrate Purposeful Discrimination. ...................... 10

        a.   The Ordinance Is Facially Neutral. .................................................. 10

        b.   The Legislative History Does Not Show Protectionism. ................ 11

II.  The Equal Protection Clause Does Not Prohibit A Law From Distinguishing Between Franchises And Stand-Alone Businesses. ........................................ 14

    1.   Rational Basis Review Requires Great Deference To Legislative Judgments. .............................................................................................. 14

    2.   The Ordinance's Franchise Provisions Are Rationally Based On Economic Benefits Enjoyed By Franchisees. ............................................ 15

    3.   There Is No Evidence Of Unjustified Animus. ....................................... 18

III. The IFA Has Not Stated A Cognizable First Amendment Claim. .................. 19

IV.  The Ordinance Is Not Preempted By The Lanham Act. ................................ 21

V.   ERISA Does Not Preempt The Ordinance. ................................................... 22

VI.  The Ordinance Does Not Violate The Washington Constitution's Privileges And Immunities Clause. ................................................................................. 25

VII. The IFA Fails To Establish That The Irreparable Harm, Balance of Hardships, or Public Interest Factors Support A Preliminary Injunction. ........................ 27

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - ii

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

3341900v1/014399

1

CONCLUSION ................................................................................................................. 29

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - iii

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

3341900v1/014399

## TABLE OF AUTHORITIES

**Cases**

*American Beverage Ass'n v. Snyder*,
735 F.3d 362 (6th Cir. 2013) .................................................. 10

*American Legion Post #149 v. Washington State Dept. of Health*,
164 Wn.2d 570 (2008) .................................................. 26

*Arizona Dream Act Coalition v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) .................................................. 27

*Associated Press v. NLRB*,
301 U.S. 103- (1937) .................................................. 19, 20

*Black Star Farms, LLC v. Oliver*,
600 F.3d 1225 (9th Cir. 2010) .................................................. 8

*Bond v. United States*,
134 S.Ct. 2077 (2014) .................................................. 22

*California Div. of Labor Standards Enforcement v. Dillingham Constr. Co.*,
517 U.S. 316 (1997) .................................................. 23, 24

*Calop Bus. Sys., Inc. v. City of Los Angeles*,
984 F. Supp.2d 981 (C.D. Cal. 2013) .................................................. 25

*City of Philadelphia v New Jersey*,
437 U.S. 617 (1978) .................................................. 7

*Conroy v. Aniskoff*,
507 U.S. 511 (1993) .................................................. 12, 13

*District of Columbia v. Greater Washington Bd. of Trade*,
506 U.S. 125 (1992) .................................................. 25

*Exxon Corp. v. Governor of Maryland*,
437 U.S. 117 (1977) .................................................. 9

*F.C.C. v. Beach Communications, Inc.*,
508 U.S. 307 (1993) .................................................. 14, 15, 17, 18

*Golden Gate Restaurant Assn. v. City and County of San Francisco*,
546 F.3d 639 (9th Cir. 2008) .................................................. 24

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - iv

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

*Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*,
  145 Wn.2d 702 (2002) ................................................................. 27

*Great Atlantic & Pacific Tea Co. v. Cottrell*,
  424 U.S. 366 (1976) ..................................................................... 7

*H.P. Hood & Sons, Inc. v. Du Mond*,
  336 U.S. 525 (1949) ................................................................ 7, 25

*Melendres vl Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ........................................................ 28

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
  514 U.S. 645 (1995) .................................................... 21, 22, 23, 24

*National Association of Optometrists & Opticians Lenscrafters, Inc. v. Brown*,
  567 F.3d 521 (9th Cir. 2009) ........................................................ 10

*Ockletree v. Franciscan Health System*,
  179 Wn. 2d 769 (2014) ........................................................... 26, 27

*Oklahoma Press Publishing Co. v. Walling*,
  327 U.S. 186 (1946) ..................................................................... 19

*Perry v. Commerce Loan Co.*,
  383 U.S. 392 (1966) ..................................................................... 10

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970) ....................................................................... 7

*Planned Parenthood Ariz. Inc. v. Humble*,
  753 F.3d 905 (9th Cir. 2014) ........................................................ 28

*Rocky Mountain Farmers Union v. Corey*,
  730 F.3d 1070 (9th Cir. 2013) ................................................... 7, 10

*Shaw v Delta Airlines*,
  463 U.S. 85 (1983) ....................................................................... 23

*United States Railroad Retirement Bd. v. Fritz*,
  449 U.S. 166 (1981) ..................................................................... 17

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ..................................................................... 21

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ..................................................................... 6, 13

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - v

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

3341900v1/014399

*WSB Elec. Inc. v. Curry*,
   88 F.3d 788 (9th Cir. 1996) ................................................................. 23

**Statutes**

Article 1 Section 12 of the Washington State Constitution ............................. 25, 26, 27

RCW 19.100.010 ..................................................................................... 20, 22

RCW 19.100.020 ..................................................................................... 20

**Regulations**

16 CFR §436.1 ........................................................................................ 20

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - vi

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

1

2

### INTRODUCTION

3   On June 2, 2014, Seattle's City Council passed Ordinance Number 124490 establishing the

4   highest minimum wage of any major city in the United States (the "Ordinance").[1]   Explicitly

5   described in its preamble as an attempt to address the growing problem of income inequality, the

6   Ordinance received unanimous support from the nine-member City Council and was signed into

7   law by Mayor Ed Murray the next day.   After the Ordinance takes effect April 1, 2015, Seattle

8   businesses will be required to pay employees a minimum wage that escalates every year until it

9   reaches $15 per hour, and that amount will be adjusted in subsequent years to match increases in the

10   cost of living.

11   The Ordinance provides for two tracks leading to the $15 per hour minimum wage.

12   Businesses are categorized as either Schedule One, having more than 500 employees nationwide, or

13   Schedule Two, having fewer than 500 employees.   Schedule One employers must implement the

14   $15 minimum wage within three years.   Small businesses have a longer phase-in period.   Under

15   both Schedules, the minimum wage may be reduced to reflect tips and benefits, but only during the

16   phase-in period.   All employers falling under either Schedule will be subject to a minimum wage of

17   at least $15 per hour by 2021 with no reduction for tips or benefits.

18   In this suit, the International Franchise Association and several franchise business owners

19   (collectively, "IFA") isolate one component of the Ordinance's phase-in schedule and argue that it

20   is so unfair and irrational that it violates the United States Constitution in at least five different

21   ways, as well as several other Federal and State laws.   The allegedly offending provision states that,

22

23   [1] The Ordinance is attached as Exhibit 1 to the Declaration of David J. Groesbeck, Dkt # 38, filed August 5, 2014.   Citations to other exhibits from this declaration will be in the form "Groesbeck Decl. Exh. #."

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 1

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

for categorizing a business as either Schedule One or Schedule Two, a franchise's employee count must include the employees of all franchise affiliates and the franchisor.  The effect of this provision will be to categorize many franchises, including well-known fast food and hotel chains, as Schedule One.

Although the relevant constitutional tests demand only minimal rationality, in fact the categorization of a franchise as a large business for the purposes of a minimum wage statute makes perfect sense.  It is indisputable that franchises enjoy many of the benefits of large businesses: owners of a local franchise are able to make purchases with the market power of the full franchise network; they receive the benefits of nationally-recognized trademarks; they sell uniform and well-known product lines; and they are able to draw customers based on pervasive national advertising, among many other benefits.  The differences between the franchise model and an independent business are discussed in more detail in the Declaration of Scott Shane, filed with this opposition brief ("Shane Decl.").  The IFA's claim that a franchisee is indistinguishable from a local business operating solo is plainly false.  Indeed, the economically-intertwined relationship between franchisors and franchisees has been the subject of increasing scrutiny in recent months.  For example, in an action that goes much further than the Seattle Ordinance in aggregating the resources of a franchisee with its franchisor, the General Counsel of the National Labor Relations Board announced on July 29th that McDonalds, the franchisor, may be held liable for certain claims asserted by employees of McDonalds franchisees.  *See,* Claire Zillman, "McDonalds Loses Big On Labor Ruling," *Fortune*, July 29, 2014 at http://fortune.com/2014/07/29/mcdonalds-worker-rights-wages-nlrb (last viewed on September 29, 2014).

Like any interested stakeholder, the IFA and Seattle franchisees were provided ample opportunity to participate in the political process that led to the Ordinance, including a number of

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 2

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

open City Council meetings addressing the proposed minimum wage increase.  As part of that process, representatives of franchises did, in fact, make essentially the same arguments that the IFA is making here.  These arguments did not prevail.  The IFA now turns to the Courts, seeking the result that it failed to obtain from the City Council and the Mayor.

The IFA pins its hopes for preliminary injunctive relief on the willingness of the Court to engage in an activist revision of settled judicial principles, because the law as it now stands does not support the extraordinary relief it seeks. The IFA faces a high burden in attempting to nullify the results of a legislative process in which the policy arguments it now advocates were presented and considered. It has failed to carry that burden.

## FACTUAL BACKGROUND

Disparity between high-income and low-income workers has grown throughout the United States since the 1970s.  Locally, income inequality has had a substantial impact.  Seattle's recent economic growth in certain industries has dramatically increased the cost of living in many areas of the city.  At the same time, many lower-income workers are still struggling with the lingering effects of the Great Recession.  This disparity threatens to create a city that is not economically viable for a large number of fully-employed workers, a city in which many residents lack the means to participate fully in civic, cultural, and economic life.  Noting that the growing income inequality was having a particularly acute impact on women and people of color, the unanimous City Council and Mayor Murray adopted the $15 per hour minimum wage as a means to help address these concerns.

Under the ordinance, the minimum wage in Seattle will begin to increase in April 2015 and will rise to $15 per hour within several years.  The length of the phase-in varies based on, among other things, the size of the business and on whether the employees are provided with

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 3

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

health insurance—smaller businesses and those which provide health insurance are given a number of additional years to reach the $15 per hour benchmark.

Seattle's minimum wage ordinance was the product of an open, public, and inclusive political process. Shortly after Mayor Murray took office in 2014, the Mayor's Office convened an Income Inequality Advisory Committee ("IIAC") with twenty-four original members representing broad and diverse perspectives on minimum wage proposals for workers in Seattle. Declaration of Robert Feldstein ("Feldstein Decl.") ¶ 7. The original members of the IIAC included representatives of business interests and labor unions, such as Maud Daudon, President and CEO of the Seattle Metropolitan Chamber of Commerce, and David Rolf, President of Service Employees International Union 775NW. *Id.*

The Mayor's Office tasked the IIAC with providing an actionable set of recommendations to address a cornerstone priority of the Mayor's agenda - an increase in the minimum wage. *Id.* at ¶ 8. Beginning in January of 2014 and through April of 2014, the IIAC convened nine times for the purpose of developing its recommendations and hosted numerous public engagement forums, including industry-specific forums and an "Income Inequality Symposium" at Seattle University. *Id.* at ¶ 9. As part of its work, the IIAC reviewed scholarly studies of minimum wage issues, including the impact of minimum wage laws in other cities. *Id.*

In approximately late March or early April of 2014, the IIAC reached a consensus on two broad principles. First, any minimum wage increase should be implemented in phases. *Id.* at ¶ 10. Second, the resources available to smaller businesses warranted a slower implementation of a minimum wage for those businesses. *Id.* In May of 2014, the IIAC transmitted its formal recommendation for raising the minimum wage to Mayor Murray. *Id.* at ¶ 11. Based on the IIAC recommendations, Mayor's Office staff drafted the terms of proposed legislation raising the

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 4

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

minimum wage, including two separate "schedules" for implementation of a higher minimum wage based on the size of a business as measured by the number of employees. *Id*. at ¶ 12.

During the deliberations of the IIAC, representatives of labor interests consistently advocated for the treatment of franchisees associated with large franchisors in the same manner as large businesses in proposed legislation, based on the benefits received by franchisees as a result of their participation in franchise networks and the distinct advantages that franchises have over independent small businesses. *Id*. at ¶ 13. Other members of the IIAC advocated that franchisees were closer to small independent businesses. *Id*. Like many issues considered by the IIAC, over time there was recognition that either view presented both policy advantages and challenges. *Id*. As part of a series of choices to craft a final compromise proposal, franchisees associated with large franchise networks were considered a large business in Mayor Murray's proposed minimum wage legislation submitted to the Seattle City Council. *Id*. at ¶ 15.

On May 15, 2014, the Mayor's Office formally transmitted the proposed legislation, which included the classification of franchisees associated with large franchisors as large businesses. After introduction at the full Council, the proposed legislation was referred to the City Council's Select Committee on Minimum Wage and Income Inequality ("Select Committee") that included all nine Councilmembers.

Prior to that referral, the Council's Select Committee conducted eight public meetings to consider minimum wage issues. At those meetings, the Select Committee reviewed scholarly minimum wage studies, received presentations from businesses and labor interests, and heard public comment from constituents.

After referral of the legislation, the Council's Select Committee considered the terms of the Mayor's proposed legislation at two additional meetings on May 22 and May 29, 2014. At

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 5

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

those meetings, the Select Committee heard additional public comment, including testimony from franchisees. On May 29, 2014, the Select Committee recommended that the legislation pass by unanimous vote of the members present. On June 2, 2014 the full Council considered the proposed legislation, again receiving public comment, including testimony from franchisees. By a unanimous 9-0 vote that same day, the Seattle City Council voted in favor of the legislation. Mayor Ed Murray signed the ordinance into law the next day.

## LEGAL STANDARD

A preliminary injunction is, "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must establish each of the following factors: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips sharply in favor of the moving party; and (4) that the public interest favors the injunction. *Id.* at 20.

## ARGUMENT

### I.   The Ordinance Does Not Constitute Protectionism Violating The Dormant Commerce Clause.

The IFA's dormant Commerce Clause argument depends entirely on a false equation of franchises with out-of-state businesses. None of the evidence or arguments offered by the IFA justifies this connection. The effect of the ordinance will not be to exclude or impose a disproportionate burden on interstate businesses. Nor is there persuasive evidence that the City's purpose in passing the Ordinance was fundamentally protectionist. Because the IFA's chance of success on this claim is, at best, remote, the dormant Commerce Clause cannot justify the requested preliminary injunction.

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 6

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

3341900v1/014399

1.      **The Dormant Commerce Clause Standard Requires Deference To The State's Legislative Authority.**

It is a fundamental principle of dormant Commerce Clause analysis that in reviewing non-discriminatory laws, courts must give substantial deference to the regulatory authority of state and local governments.  As the Supreme Court has repeatedly emphasized, "under our constitutional scheme the States retain broad power to legislate protection for their citizens on matters of local concern . . .[and] not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the States."  *Great Atlantic & Pacific Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976) (internal citation and punctuation omitted); *see also H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949) (stating that, "even burdensome regulations [passed] in the interest of local health and safety" have generally been upheld).  Indeed, the willingness of individual states to "serve as a laboratory and try novel social and economic experiments" is one of the strengths of federalism that must not be discouraged through overly-aggressive dormant Commerce Clause jurisprudence.  *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (internal citation and quotation omitted).

The test applicable to a dormant Commerce Clause challenge depends on the nature of the law.  "[W]here simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected."  *City of Philadelphia v New Jersey*, 437 U.S. 617, 624 (1978).  However, "where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Id.* (quoting *Pike v. Bruce Church, Inc.* 397 U.S. 137, 142 (1970)).

The IFA's brief addresses only the first standard and makes no attempt to show a likelihood of success under the more deferential balancing test.  According to the IFA, both the

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 7

PETER S. HOLMES
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

*effects* of the Ordinance's franchise provisions and the *purpose* behind those provisions demonstrate discrimination against interstate commerce sufficient to constitute unlawful protectionism.  Brief at 13-17.[2]  Neither claim is persuasive.

> **2.    The IFA Has Not Demonstrated Discriminatory Effects.**

The evidentiary standard for proving that a facially neutral statute has a discriminatory effect is high.  In adopting principles endorsed by the First, Sixth, and Seventh Circuits, the Ninth Circuit has held that a "plaintiff claiming discriminatory effect must submit probative evidence of adverse impact and where a statutory provision is even-handed on its face and wholesome in its purpose a substantial evidentiary showing is required to prove discriminatory effect."  *Black Star Farms, LLC v. Oliver*, 600 F.3d 1225, 1232 (9th Cir. 2010) (internal quotations and citation omitted.)

In arguing that the Ordinance has the effect of discriminating against interstate commerce, the IFA relies on data indicating that 96% of the franchises operating in Seattle are affiliated with an out-of-state franchisor.  Brief at 13.  This figure is not nearly as significant as the IFA contends; Washington is only one of fifty states, including just over two percent of the nation's population (according to the 2010 Census), so it is hardly surprising to find that in regulating based on size of a business, the great majority of large businesses are based in other states.

More importantly, courts, including the United States Supreme Court, have repeatedly rejected the IFA's rationale as a basis for finding that a state law impermissibly discriminates against interstate commerce.  Even a showing that one-hundred percent of the impact of state legislation will be sustained by out-of-state businesses does not demonstrate impermissible

---

[2] Citations to "Brief" are to Plaintiffs' Motion For A Limited Preliminary Injunction, Dkt # 37, filed August 5, 2014.

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 8

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

protectionism.   In upholding a Maryland statute that prohibited producers and refiners of

petroleum from owning retail gas stations, the Supreme Court rejected an argument based on the

fact that *all* of the producers and refiners affected by this ban were out-of-state companies.

*Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 125-129 (1977).  That the burden of the

legislation fell entirely on out-of-state businesses, "does not lead, either logically or as a practical

matter, to a conclusion that the State is discriminating against interstate commerce in the retail

market."  *Id.* at 125.  The Court noted that Maryland had not penalized the out-of-state gas

station owners who were not also refiners or producers of petroleum.  *Id.* at 126.  Similarly, the

Seattle Ordinance does not even arguably impose any additional burdens on large out-of-state

businesses that are not also imposed on large in-state businesses.

In a passage fatal to the IFA's claims here, the *Exxon* Court emphasized that the dormant

Commerce Clause protects the interstate flow of goods, not individual business or business

structures:

> We cannot, however, accept appellants' underlying notion that the Commerce
> Clause protects the particular structure of methods of operation in a retail market.
> As indicated by the Court in *Hughes*, the Clause protects the interstate market, not
> particular interstate firms, from prohibitive or burdensome regulation.

*Id.* at 127-128 (internal citation omitted).

Following *Exxon*, the Ninth Circuit has repeatedly rejected arguments that state

legislation should be found discriminatory because its burdens fall primarily—or even entirely—

on out-of-state interests.   For example, in a case addressing California carbon-emission

regulations, the Court found that the imposition of an increased carbon penalty according to a

scheme that, in application, imposed greater burdens on ethanol originating from outside

California was not discriminatory so long as the regulation was supported by "some reason, apart

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 9

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

from [the] origin" and "reflected attention to the legitimate goals of regulation."  *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1094-1095 (9th Cir. 2013); *see also National Association of Optometrists & Opticians Lenscrafters, Inc. v. Brown*, 567 F.3d 521, 524 (9th Cir. 2009) (California law burdening opticians and favoring ophthalmologists and optometrists was not discriminatory despite evidence that the majority of opticians were from out-of-state and the other categories were primarily local businesses).  The Ordinance's franchise provisions easily satisfy these requirements because they are facially neutral and because they advance the non-protectionist goal of identifying businesses enjoying certain economic benefits and therefore, as a whole, able to move to a higher minimum wage more quickly, wherever those businesses are based.

### 3. The IFA Cannot Demonstrate Purposeful Discrimination.

#### a. The Ordinance Is Facially Neutral.

In addition to its argument based on the Ordinance's effects, the IFA contends that the Ordinance's franchise provisions are unlawful because their purpose is to discriminate against out-of-state business interests. Brief at 15-17.  When considering a claim that a state law was motivated by unconstitutional protectionism, courts look first to the language of the law itself.  *American Beverage Ass'n v. Snyder*, 735 F.3d 362, 371 (6th Cir. 2013).  The language of the statute is the "most persuasive evidence" of the law's purpose.  *Id.* (citing, among other cases, *Perry v. Commerce Loan Co.*, 383 U.S. 392, 400 (1966)).

Nothing in the Ordinance so much as mentions the geographic location of businesses.  Nor do any of the Ordinance's provisions—including its large and small business classifications—apply any differently to out-of-state businesses than they do to Washington businesses.  Instead of geography, the focus of the Ordinance is economic wherewithal and the

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 10

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

1    desire to allow smaller businesses with fewer resources a longer phase-in period for the $15

2    minimum wage.  *See* Ordinance, Section 1, ¶ 4 (Groesbeck Decl., Exh. 1).

3          In this context, the obvious purpose of the Ordinance's provisions for classifying

4    businesses as large or small is the evaluation of the economic resources available to those

5    businesses.  By counting the employees of the franchise network along with those employed by

6    individual franchisees, the Ordinance attempts to account for the economic benefits that

7    franchising provides to the franchisees.  This classification of franchises reflects a legislative

8    judgment about economic resources, not an effort to protect Seattle business from competition.

9    Nothing in these facially neutral provisions suggests otherwise.[3]

10         Moreover, the City was well aware that franchises are, as the IFA points out, frequently

11   owned and operated by a local Seattle resident.   These franchise business-owners are local

12   taxpayers and voters just as much as the owners of stand-alone businesses. It hardly evidences

13   local protectionism to disadvantage one group of Seattle business owners as compared with

14   another.  If anything, the City's willingness to impose the more aggressive pay increases on

15   Seattle franchises demonstrates the opposite of the interstate discrimination claimed by the IFA.

16              **b.       The Legislative History Does Not Show Protectionism.**

17         Extraneous evidence also fails to demonstrate prejudice in this case.  None of the snippets

18   from the legislative history and related commentary cited by the IFA even raise a credible

19   possibility that the Ordinance was motivated by protectionism.  As an initial matter, the IFA's

20

21         [3]  To make its "discriminatory purpose" argument sound more plausible, the IFA
     misleadingly inserts the word "interstate" into phrases where it does not belong.   For example,
22   the IFA's brief claims repeatedly that the Ordinance defines franchises as businesses with "ties to
     *interstate* franchise networks."  *See, e.g.,* Brief at 16 (twice), 18 (emphasis added).  This is
23   purely an invention of the IFA—the operative provisions of the ordinance say absolutely nothing
     about franchise networks being "interstate."

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 11

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

selective presentation of this evidence is inherently misleading.  This Ordinance was the product of a long and involved legislative process in which many interest groups and constituents had input.  Feldstein Decl. ¶¶ 7-19.   Singling out a few comments as proof of a secret protectionist motive ignores the broader context, the contrary views that were also expressed, and the balancing and compromises that are the heart of the legislative process.  *See Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring) ("Judge Harold Leventhal used to describe the use of legislative history as the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends.")

More specifically, none of the actual comments relied upon by the IFA demonstrates an intent to favor Washington businesses over business from other states.  The IFA offers evidence of comments from only one of the nine City Council members who voted in favor of the Ordinance.   In those comments, Councilmember Kshama Sawant expressed her views that (1) only wealthy people can afford to buy into a franchise; (2) the franchise system disadvantages workers; and (3) franchise owners should seek more favorable terms from their franchisors if the minimum wage causes them financial difficulty.  Brief at 8, 11, 16.  Not one of these statements has anything at all to with whether franchise networks are located either within or outside of Washington State.  If Councilmember Sawant's statements were somehow reflective of the entire Council's views, they would *disprove* the IFA's dormant Commerce Clause claim by showing that factors unrelated to geography informed her support for the Ordinance.

The only other elected official cited by the IFA is Mayor Ed Murray.  Mayor Murray is quoted as describing the franchise business model as a "problem" that "needs to change" and as identifying franchises as affiliated with a "corporate national entity."  Brief at 7, 11-12, 15.  Like Ms. Sawant, Mayor Murray also suggested that franchise owners renegotiate the terms of their

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 12

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

agreements with their franchisors if necessary.  *Id*. at 11.   Once again, these comments are wholly unrelated to geographic location and actually contradict the IFA's claim that the treatment of franchises in the Ordinance was motivated by unconstitutional protectionism.

The IFA also seeks to demonstrate an illicit motive with quotes from emails, on-line posts, and other materials—none of which were written or endorsed by any representative of the City Government.   One of these is an email from IIAC member Nick Hanauer to City Council member Tim Burgess.  In it, Hanauer identifies some of *his* reasons for supporting the franchise provisions ("I believe there are very good reasons for this.")  Groesbeck Decl. Exh. 2.  To begin with, the relevance of this email is dubious—the committee on which Hanauer served did not even issue a recommendation concerning treatment of franchises and the thoughts that Hanauer expressed an email cannot be attributed to the email's recipient, Concilmember Burgess.  Setting those relevance issues aside, the email does not advocate any form of protectionism.  Reading the email in full, instead of just the excerpts included in the IFA's brief, it is clear that Hanauer's views were based primarily on franchises' treatment of their employees: "These companies have optimized their business models around paying workers poverty wages while corporate racks up huge profits and tax payers make up the difference."  *Id.*  By the same token, a draft email to Hanauer from Robert Feldstein, a member of Mayor Murray's staff, expresses general agreement with Hanauer's thoughts on franchises while exploring potential hardship that some franchise owners might face.[4]  Groesbeck Decl. Exh. 3.  Again, protectionism for Washington business is not mentioned.   Moreover, Mr. Feldstein was engaged in an effort to reach a delicate compromise on a minimum wage proposal.  A significant amount of rhetoric is exchanged, and

---

[4] Feldstein never actually sent this email to Hanauer, raising serious questions about how relevant or persuasive the Court should find it to be.

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 13

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

1    many things are said during these types of negotiations and discussions involving disparate

2    stakeholders that are easily taken out of context.  Feldstein Decl. ¶ 18.

3    **II.     The Equal Protection Clause Does Not Prohibit A Law From Distinguishing**
        **Between Franchises And Stand-Alone Businesses.**

4

5            **1.     Rational Basis Review Requires Great Deference To Legislative Judgments.**

        As the IFA admits, its equal protection claim requires proof that the challenged sections

6    of the Ordinance lack any rational basis.  Brief at 17.  But the IFA fails to acknowledge the

7    degree of deference that courts are required to give economic regulation under this standard.  In a

8    1993 decision, the Supreme Court provided a detailed explanation of rational basis review under

9    the equal protection clause:

10
              Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal
11            protection is not a license for courts to judge the wisdom, fairness, or logic of
              legislative choices.  In areas of social and economic policy, a statutory
12            classification that neither proceeds along suspect lines nor infringes fundamental
              constitutional rights must be upheld against equal protection challenge if there is
13            **any reasonably conceivable state of facts that could provide a rational basis**
              **for the classification**. Where there are plausible reasons for Congress' action, our
14            inquiry is at an end. This standard of review is a paradigm of judicial restraint.
              The Constitution presumes that, absent some reason to infer antipathy, even
15            improvident decisions will eventually be rectified by the democratic process and
              that judicial intervention is generally unwarranted no matter how unwisely we
16            may think a political branch has acted.

17   *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993) (emphasis added, internal

18   quotation marks and citations omitted).

19          The *Beach Communications* opinion goes on to emphasize that statutory classifications

20   enjoy a "strong presumption of validity" and that a party raising a rational basis challenge must

21   "negative every conceivable basis which might support it."  *Id.* at 314-315.  If any rational basis

22   for the legislation can be identified, there is no need to determine whether the legislature actually

23   relied on it: "It is entirely irrelevant for constitutional purposes whether the conceived basis

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 14

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

actually motivated the legislature." *Id.* at 315.  There is no requirement that the legislative decision be supported by any investigation or fact-finding; it may instead be upheld "based on rational speculation unsupported by empirical data." *Id.*

2.      **The Ordinance's Franchise Provisions Are Rationally Based On Economic Benefits Enjoyed By Franchisees.**

The IFA cannot come close to showing a likelihood of success under this standard.  It asserts that the distinction between franchises and local businesses lacks a rational basis because it is "arbitrary" and that the two groups are "identical in all material respects."  Brief at 17.  But the IFA contradicts these claims three pages earlier when, in its dormant Commerce Clause argument, it emphasizes that franchises *differ* from purely local businesses because franchises are affiliated with a franchisor and a network of other franchisees.  This difference is more than sufficient to provide a rational basis for the Ordinance's classification of franchises.

What the IFA ignores here, as it does throughout its brief, are the economic benefits flowing to a franchisee as a result of the franchise relationship.  In many cases, these benefits provide franchisees with substantial advantages over purely local small businesses, including national advertising, extremely valuable and well-known trademarks, the market power of a large corporation when purchasing supplies and raw materials, and access to valuable and trustworthy information based on the experiences of other franchisees. Shane Decl. at ¶¶ 10-17.  As the preamble to the Ordinance makes clear, the longer phase-in for small businesses was designed to aid firms likely to have fewer economic resources.  Within this framework, the Ordinance rationally takes into account the benefits franchisees receive from their affiliation with franchisors.  This is not an unlawful denial of equal protection; it is a paradigmatic example of legislative judgment based on a balancing of various economic factors.  As such, the legislature's determination is entitled to near-absolute judicial deference.

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 15

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

The IFA's claim is not rescued by the declarations and testimony from the cherry-picked franchisee plaintiffs who claim that their businesses do not receive some of the benefits of franchising. None of these plaintiffs argues that the franchise relationship provides them with no benefits at all; in fact, all admit that they have benefitted from their franchise relationships.

For example, plaintiff Ronald Oh, the partial owner of a Holiday Inn Express franchise, testified that through his franchise network he receives the use of a large on-line reservation system which provides at least twenty-percent of his hotel's guests; he receives the benefit of a loyalty reward system that has 74 million members worldwide; he is able to consult with others in his franchise network and receive assistance on a host of issues. *See* Excerpts from the deposition of Ronald Oh, Sargent Decl., Exh. 1, at 19-21, 27-28, 32, 33, 89-92. Mr Oh's franchise agreement identifies other benefits, including use of Holiday Inn's trademarks, training, and certain marketing benefits. Sargent Decl., Exh. 2 at Section 4. Similarly, plaintiff Katherine Lyons, partial owner of a BrightStar Care franchise, acknowledged that her franchisor provided assistance in obtaining an SBA loan; the time-saving ability to receive assistance with various matters from a single source; a network of other franchisees who provide trustworthy business advice and whom she can trust; and a franchise-wide marketing fund. *See* Excerpts from the deposition of Katherine Lyons, Sargent Decl, Exh. 3, at 25, 55, 63-65, 74-75. Ms. Lyons franchise agreement identifies the use of business software, training, trademarks, and assistance with both opening and operating the business as benefits provided by her franchisor. Sargent Decl., Exh. 4 at Sections 1.8, 3, 5, and 8. A third plaintiff, Charles Stempler, confirmed at his deposition that a document from the IFA's website listing benefits provided by his franchisor AlphaGraphics is accurate and that AlphaGraphics does, in fact, offer these benefits to its franchisees. Excerpts from the deposition of Charles Stempler, Sargent Decl., Exh. 5, at 61;

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 16

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

and Exhibit 4 from the Stempler Deposition, attached as Exh. 6 to the Sargent Decl.   Mr. Stempler's AlphaGraphics franchise agreement (the first of six Mr. Stempler agreed to enter into with his franchisor) also identifies a number of benefits that AlphGraphics has contractually agreed to provide its franchisees including assistance with site selection; advice on financing; detailed plans for a print shop; three to four weeks of training; up to forty-eight hours per year of free consultation; operating manuals; and use of trademarks.   Sargent Decl., Exh. 7 at IFA-0020, 021, 023-24, 027, 028-30.[5]

Moreover, legislation inevitably involves line-drawing, and a statute cannot be invalidated simply because the line could have been drawn differently or because some affected parties would have been less disadvantaged had the line been drawn in a different way.   As the Supreme Court has held, "[t]he task of classifying persons for benefits inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line."   *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1981) (internal quotation and citation omitted).   In these circumstances, the restraints on judicial review have "added force."   *Beach Communications*, 508 U.S. at 315.   For the same reason, the IFA cannot succeed in arguing that the Ordinance violates equal protection by classifying some smaller franchisees with larger businesses like Boeing.   Brief at 17.   Almost all businesses operating in Seattle are subject to the minimum wage.   The City Council's decision to permit one class of businesses to increase their wages somewhat more slowly is not subject to *post hoc* reconsideration by the courts simply because some plaintiffs believe that they deserved to be included in that class.

---

[5] Based on deposition testimony, it appears that none of the individual plaintiffs directly pay wages to any of their businesses' employees.  Defendants reserve the right to raise a challenge to these plaintiffs standing to challenge the Ordinance on this basis.

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 17

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

Separate provisions in the Ordinance identifying when non-franchise businesses will have their employee counts aggregated do not, as the IFA contends, conflict with the franchise provisions and certainly do not demonstrate the absence of a rational basis.  *See* Brief at 18-19. By insisting that the integration provisions applicable to non-franchises should also apply to franchises, the IFA once again wrongly assumes that franchising provides no benefits to franchisees and that small franchisees are indistinguishable from other small, non-franchised businesses.  But this distinction between franchisees and non-franchisees has a rational basis, as discussed above.  The Ordinance's employee-count integration provisions simply demonstrate that in some circumstances, *in addition to franchising,* the City has determined that employees of different corporate entities should be aggregated based on the economic realities of their business structure.  If anything, this supports the rationality of the treatment of franchises because it applies the same principle to other businesses.

### 3.       There Is No Evidence Of Unjustified Animus.

The Court should give no credence to the IFA's claim that the treatment of franchises was driven by "mere animus" or a "forbidden motive."  Brief at 19.  Once a rational basis for the categorization has been identified "the inquiry is at an end."  *Beach Communications,* 508 U.S. at 314.  Even if animus were an issue, the quotes from several officials and participants in the legislative process relied upon by the IFA do not demonstrate an irrational hatred of franchises. Instead, they reflect a policy battle between labor representatives and certain business interests. In fact, the process and debate that led up to the Ordinance is a classic example of how politicians successfully enact controversial legislation.  Feldstein Decl. at ¶¶ 16-19.   When the final terms of the Ordinance were determined some compromises favored labor, while others favored business interests.  Feldstein Decl. at ¶ 16.  Certainly there is no evidence that either

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 18

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

labor leaders or City officials were motivated by blind prejudice against franchises.  If franchises were a focus for labor interests, that is because of wage and employment policies adopted at many franchises, not irrational animus.  Indeed, franchise employees have played a significant part in the nationwide living-wage movement that was part of the impetus for the Seattle Ordinance.  *See* Tierney Sneed, "Fast-Food Workers to Strike to Super-Size Their Wages," US News, September 3, 2014, Sargent Decl. Exh. 8.  None of this undercuts the rational basis for the Ordinance's classification of franchises or demonstrates that the IFA has any chance of success on its equal protection claim.

## III.   The IFA Has Not Stated A Cognizable First Amendment Claim.

The IFA's claim that the Ordinance unconstitutionally burdens the right to free speech and free association lacks any legal basis.  Nothing in the Ordinance regulates any speech or association rights whatsoever.  Instead, plaintiffs' theory is that if franchisees must pay higher wages faster than certain other employers, they will have fewer funds available to pay for advertising, which constitutes First Amendment-protected commercial speech.  *See* Complaint at ¶ 169 (increased wages will reduce commercial speech in violation of the First Amendment). But the Supreme Court has long held that the Constitution does not protect even businesses such as newspapers engaging in core First Amendment speech from laws of general application that might indirectly impact that speech.  *See, e.g., Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 192-93 (1946) (holding that a newspaper could be subject to the Fair Labor Standards Act); *Associated Press v. NLRB*, 301 U.S. 103-132-33 (1937) (holding that a news organization is subject to the National Labor Relations Act).

The IFA argues that the Ordinance infringes First Amendment rights because it "penalizes" certain small businesses for engaging in particular forms of speech and association.

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 19

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

3341900v1/014399

Brief at 21.   The IFA is correct that the Ordinance defines franchisees based, in part, on their shared use of trademarks and on their association with a franchisor.   According to the IFA, this method of categorization violates the First Amendment because it effectively penalizes the identified uses of trademarks and forms of association.   *Id.*

The IFA offers no citation to any case law whatsoever supporting this expansive theory of First Amendment rights.   If it were to be adopted, then any legislation referencing use of trademarks or forms of business association would be vulnerable.   Most states as well as the federal government have laws that define franchises using a test very similar to the one in the Ordinance, including the references to trademarks and association with a franchisor. *See, e.g.,* 16 CFR §436.1; RCW 19.100.010.   In many circumstances, these laws impose burdens on franchises, such as registration requirements and restrictions on conditions of transfer.   *See, e.g.,* RCW 19.100.020.   Under the IFA's theory, these legal provisions would all be unconstitutional to the degree that they burden a franchisee (or franchisor) as a result of their use of trademarks or their decision to form a business relationship.

More fundamentally, the IFA's characterization of the Ordinance's treatment of franchises as a penalty on speech or association does not withstand scrutiny.   The Ordinance takes account of the benefits of the franchise relationship when determining the economic resources available to a business, and it categorizes franchises accordingly.   Although the IFA contends that franchises should have been placed in a different category, the City's determination does not qualify as a "penalty" unless the IFA is indisputably correct that there is no material difference between a franchisee and an independent business.   Trademarks have value—indeed, some franchise trademarks are among the most valuable and well-known in the world.   Franchisees pay substantial fees for the right to use those trademarks and for the other benefits

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 20

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

that come with their franchise association.  It does not constitute a violation of First Amendment rights for the Ordinance to acknowledge that value when classifying businesses according to their economic resources.  As the Supreme Court has made clear, the First Amendment does not bar enforcement of a law that "serves purposes unrelated to the content of expression . . . even if it has an incidental effect on some speakers or messages but not others."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

**IV.    The Ordinance Is Not Preempted By The Lanham Act.**

In a near-repeat of its First Amendment claim, the IFA contends that the Ordinance is preempted by the Lanham Act because it burdens franchisees' exercise of trademark rights. Brief at 23-24.  The argument is even less plausible in this guise than it is under the First Amendment.  No authority supports the IFA's novel interpretation of Lanham Act preemption. The IFA cannot demonstrate a likelihood of success on this claim and the claim certainly does not justify issuance of a preliminary injunction.

As in its First Amendment argument, the IFA claims that because the Ordinance defines franchises based, in part, on reference to certain uses of trademarks, any burden the Ordinance imposes on those franchises unlawfully interferes with federally-protected trademark rights. Brief at 24. Although the Lanham Act has been held to preempt state laws directly regulating trademarks, the IFA has not identified any precedent for finding that the Lanham Act preempts state laws that merely categorize certain businesses based on their use of trademarks.   All preemption analysis begins with the intent of Congress in passing the federal law in question. *See, e.g., N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655 (1995).  In areas where the states have traditionally exercised regulatory authority, there is a presumption against preemption: "[W]e have worked on the assumption that the

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 21

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

3341900v1/014399

1  historic police powers of the States were not to be superseded by the Federal Act unless that was

2  the clear and manifest purpose of Congress." *Id.* (internal quotation marks and citation omitted).

3  *See also Bond v. United States*, 134 S.Ct. 2077 (2014) ("when legislation affects the federal

4  balance, the requirement of clear statement assures that the legislature has in fact faced, and

5  intended to bring into issue, the critical matters involved in the judicial decision") (internal

6  quotation marks and citations omitted).

7        There is no "clear and manifest" evidence that Congress intended the Lanham Act to

8  preempt traditional state regulation of wages paid by local businesses.  Nor is there any such

9  evidence that Congress intended to prohibit states from identifying trademarks as an asset when

10  classifying businesses for regulatory purposes.  On the contrary, state and federal laws governing

11  franchises have long relied on trademark agreements as one of the indicia that a business is a

12  franchise.  As with the expansive First Amendment claim, the IFA's Lanham Act preemption

13  analysis would render the franchise regulatory statutes of Washington and many other states void

14  because they, too, define franchises based on trademark use.  *See, e.g.,* RCW 19.100.010.

15  **V.     ERISA Does Not Preempt The Ordinance.**

16        Under the Ordinance, large employers (those with more than five hundred employees)

17  who provide their employees with health insurance plans classified as "silver" or "gold" under

18  the federal Affordable Care Act are subject to a wage scale that gives them more time to reach

19  $15 per hour.  Ordinance at 14.19.030(B).  The IFA claims this provision is preempted by

20  ERISA because it "relates to" an ERISA-governed employee benefits plan.  Brief at 24-26.

21        First, this claim is irrelevant to the pending motion because the provisions related to

22  health plans are not among those that the IFA seeks to enjoin.  In this motion, the IFA has asked

23  only for a preliminary injunction preventing enforcement of the franchise-related provisions, not

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 22

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

the provisions applicable to small businesses with health plans. Even if the IFA's ERISA claim had merit, it would not support the injunction requested here.

ERISA preemption jurisprudence divides into two distinct periods, with the line drawn by the Supreme Court's decision in *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995), supplemented by a second significant decision a year later in *California Div. of Labor Standards Enforcement v. Dillingham Constr. Co.*, 517 U.S. 316 (1997). Pre-*Travelers*, ERISA preemption was applied extremely broadly based on what purported to be a literal interpretation of the key phrase "related to any employment benefit plan." *See, e.g., Shaw v Delta Airlines*, 463 U.S. 85, 90 (1983). In *Travelers*, the Court recognized that the concept "related to" potentially had no limits and so provided no meaningful guidance as to the correct scope of preemption. *Travelers*, 514 U.S. at 655. *Travelers* and *Dillingham* set out more a more specific interpretation for each of the two strains of ERISA "related to" preemption—preemption of laws that make "reference to" ERISA plans, and preemption of laws that have a "connection to" ERISA plans.

The IFA's argument relies on pre-*Travelers* ERISA cases such as *Shaw* and so assumes an overly-broad field of preemption. To begin with, the courts have recognized a presumption against ERISA preemption, as is true for any other federal preemption claim, when the statute under review operates in an area that has traditionally been occupied by the states. *WSB Elec. Inc. v. Curry*, 88 F.3d 788, 791 (9th Cir. 1996). Wages are such an area. *Id.* Under *Dillingham*, a state law has a forbidden "reference to" an ERISA plan and is therefore preempted if (1) it acts immediately and exclusively on ERISA plans or (2) the existence of ERISA plans is essential to the law's operation. *Dillingham*, 519 U.S. at 324-25. Neither test is met here. The Ordinance does not require any employer to provide benefits through an ERISA plan nor does it dictate the

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 23

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

contents of any such plan.  The Ordinance simply allows large employers who do provide health benefits (at least some of which, presumably, are not provided through ERISA plans) to receive what amounts to a credit against the minimum wage for a period of time.  Because this provision does not *act upon* any ERISA plan, nor is any ERISA plan *essential* to its operation, the provision does not make "reference to" such a plan and is not preempted on that basis.

Nor are the health-plan provisions of the Ordinance preempted because of a forbidden "connection with" an ERISA plan.  *Travelers* cautioned that, like the umbrella "relate to" preemption concept, "connection with" can potentially be limitless and so must be cabined by careful attention to Congress' intentions in passing ERISA.  *Travelers*, 514 U.S. at 656.  In analyzing "connection with" preemption, courts look to two primary factors (1) the objectives of ERISA and (2) the nature of the impact that the challenged state law has on ERISA plans. *Dillingham*, 519 U.S. at 325.  One of Congress' primary objectives in passing ERISA was to provide a uniform regulatory regime for employee benefits plans to reduce the burden on employers who might otherwise have to comply with a patchwork of administrative and regulatory requirements.  *See Golden Gate Restaurant Assn. v. City and County of San Francisco*, 546 F.3d 639, 655 (9th Cir. 2008).  This objective is not undermined or impacted at all by the Ordinance: The Ordinance does not require any employer to provide any ERISA plan; it does not dictate the contents or any administrative requirements for such a plan; it does not have any direct impact on any ERISA plan; and it does not impose reporting, disclosure, fuinding, or vesting requirements on any ERISA plan.  As a result, there is no basis under the *Dillingham* "connection with" analysis to find that the Ordinance is preempted.[6]

---

[6] *See also Calop Bus. Sys., Inc. v. City of Los Angeles,* 984 F. Supp.2d 981, 1000-05 (C.D. Cal. 2013) (city ordinance requiring contractors and subcontractors doing city work to pay a living

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 24

PETER S. HOLMES
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

The IFA relies on a pre-*Travelers* case involving a local statute that required employers to provide equivalent health plans to employees who were on workers comp as they did to employees who were working.  *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130 (1992).  First, *Greater Washington* is a pre-*Travelers* decision and as such applies the broader interpretation of "relate to" that is no longer good law.  Second, the statute at issue in *Greater Washington* required employers to provide certain benefits to employees.  This requirement had an impact on the employer's ERISA benefit plans that established a basis for "reference to" preemption.  *Id.* at 583-84.  The Ordinance sets no such requirement, and no employer must provide any particular benefits to any employee under its terms.  As such, it is distinguishable from the law at issue in *Greater Washington.*

## VI.  The Ordinance Does Not Violate The Washington Constitution's Privileges And Immunities Clause.

Article 1 Section 12 of the Washington State Constitution provides, "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." The IFA contends that the Ordinance violates this section by denying franchises equal treatment. Brief at 26-27.  This claim fails because the IFA cannot demonstrate a likelihood of success on either the prerequisites for invoking Article 1 Section 12 or the contention that there is no reasonable basis for the distinction between stand-alone businesses and franchises.

In most contexts, Article 1 Section 12 is construed to require no more than is required by the federal equal protection clause.  *Ockletree v. Franciscan Health System*, 179 Wn. 2d 769, 776 (2014).  Only if the challenged law involves a "privilege" or an "immunity" does Article 1

wage, the amount of which depends on whether the contractor or subcontractor provides health benefits, not preempted).

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 25

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

3341900v1/014399

Section 12 come into play.  *Id.*  These categories are invoked only when the law infringes a fundamental right of citizenship that exists independent of the legislature's authority.  *Id.* at 778 ("Generally, rights left to the discretion of the legislature have not been considered fundamental."); *American Legion Post #149 v. Washington State Dept. of Health*, 164 Wn.2d 570, 607 (2008).

In this case, no such fundamental right is at issue.  The challenged provisions of the Ordinance relate to the time frame for implementation of a minimum wage.  By definition, a minimum wage is a creation of the legislature and so any related rights certainly do not exist independently. The IFA attempts to overcome this obstacle by characterizing the Ordinance as related to the fundamental "right to do business."  Brief at 26.  This argument overstates the significance of the provisions under review. Nothing in the Ordinance, and certainly not the franchise-related provisions, prevents anyone from exercising their right to "do business."  *See, e.g., American Legion*, 164 Wn.2d at 608 (holding that business regulations that do not "prevent any entity from engaging in business" do not involve a fundamental right).  Unless every business-related regulation is to be deemed an infringement of a fundamental right to "do business," and every such regulation made subject to judicial reconsideration, the "right to do business" must be interpreted to mean laws that have been shown to effectively prevent the plaintiff from operating.  *See, e.g., Ockletree*, 179 Wn.2d at 779 (holding that "privileges and immunities must be construed narrowly to avoid having courts "called upon to second-guess the distinctions drawn by the legislature for policy reasons nearly every time it enacts a statute.")

Even if the Court were to determine that this challenge does involve a "privilege" or "immunity", the franchise provisions do not violate Article 1 Section 12.  The applicable standard requires a showing that the distinction drawn in the legislation has a "reasonable

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 26

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

ground." *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 145 Wn.2d 702, 731 (2002). To satisfy this requirement, distinctions must "rest on real and substantial differences bearing a natural, reasonable, and just relation to the subject matter of the act." *Ockletree*, 179 Wn.2d at 783 (internal quotation and citation omitted). The Ordinance's treatment of franchises readily satisfies this standard for the reasons described above in response to the IFA's equal protection claim. *Supra* Section II. 2. Franchises are clearly "reasonably" distinguished from stand-alone businesses. They typically enjoy benefits not available to independent business owners, and these benefits have recognizable economic value to the franchisees. As in the context of the equal protection claim, these economic benefits support the reasonableness of the Ordinance's distinction between franchises and small businesses that operate completely independently.

**VII. The IFA Fails To Establish That The Irreparable Harm, Balance of Hardships, or Public Interest Factors Support A Preliminary Injunction.**

The IFA's motion for preliminary injunction should be denied because the IFA cannot demonstrate a likelihood of success on any of its claims. In addition, the IFA does not succeed in making the necessary showing for any of the three additional requirements for a preliminary injunction.

The IFA insists that its claims demonstrate a likelihood of irreparable harm even though this cases concerns quantifiable payments of money, and not direct restrictions on intangible rights. *See, e.g., Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) (irreparable harm involves injury that cannot be compensated in money damages). First, the IFA cites to cases involving unlawful detention and direct restrictions on access to health care for the proposition that all alleged infringements of Constitutional rights involve irreparable harm. Brief at 27 citing *Melendres vl Arpaio,* 695 F.3d 990, 1002 (9th Cir. 2012) and *Planned Parenthood*

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 27

PETER S. HOLMES
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

*Ariz. Inc. v. Humble*, 753 F.3d 905, 911 (9th Cir. 2014) (both cited in Brief at 27).  Any such rule should not apply when the only alleged constitutional injury operates indirectly, through readily quantifiable financial restrictions.  The IFA also alleges that the businesses owned by the named plaintiffs will suffer competitive injury as a result of the Ordinance.  This claim is entirely speculative and cannot satisfy the requirement that irreparable harm be "likely."  As Professor Shane explains, the actual impact of the Ordinance on these businesses might be positive, even as compared with competitors who are able to pay a somewhat lower minimum wage for several years.  *See* Declaration of Scott Shane at ¶¶ 32-36.  For example, plaintiff Katherine Lyons testified at her deposition that there is a competitive market for qualified workers in the home health-care industry in which her franchise operates.  Excerpts from deposition of Katherine Lyons, Sargent Decl., Exh. 3 at 41-42. If she increases her wages as compared with some of her competitors, she is likely to either obtain better caliber employees or force her non-franchise competitors to match her compensation. And plaintiff Ronald Oh acknowledged (1) that he has no knowledge about the wages actually paid by any of his competitors and (2) that increased labor costs would not necessarily require him to raise his rates.  Excerpts from deposition of Ronald Oh, Sargent Decl. Exh. 1 at 48-49, 54-55.

The balance of hardships factor also fails to support the requested injunction.  In contrast to the speculative harm that the four businesses operated by the named plaintiffs may suffer, there are thousands of Seattle workers at hundreds of Seattle franchises whose wages will be lower as a result of the requested "limited injunction" compared to what they will earn under the Ordinance.  Certainly these workers are at least as likely as the franchisees to suffer harm if their wages are not increased according to the schedule in the Ordinance.  For a business, wages are an expense the increase of which might or might not result in lower profits, depending on a wide

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 28

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

variety of market conditions.  For any workers whose pay is reduced, the loss of income will be a direct hardship.  In this context, the IFA absolutely cannot make the required showing that the balance of hardships *tips sharply* in favor of the plaintiffs.

The public interest here absolutely does not support the requested injunction.  Seattle's minimum wage Ordinance has received widespread support from the local community.  Mayor Murray, Councilmember Sawant, and others were elected in 2013 running on platforms that had increasing the minimum wage as a centerpiece.  Two efforts to overturn the Ordinance through a public referendum both failed to gather the necessary support to be placed on the ballot.  Franchise workers in particular have been an active and important constituency in seeking to increase the minimum wage.  *See* Joel Connelly, "Seattle Enacts $15 Minimum Wage, A Phased-In Big Dream," Seattle Post-Intelligencer, June 2, 2014, Sargent Decl. Exh. 9, at p. 2.  Undoing a key element of this historic initiative would undermine these efforts and flatly contradict the policy that Seattle citizens have repeatedly and strongly endorsed.

## CONCLUSION

The IFA fails to make the showing necessary to justify the preliminary injunction sought in this motion.  The motion should, therefore, be denied.

DATED this 29th day of September, 2014.

PETER S. HOLMES
Seattle City Attorney

By:     /s/Gregory C. Narver
WSBA #18127
/s/Gary T. Smith
WSBA #29718
/s/John B. Schochet
WSBA #35869
Assistant City Attorneys
Attorneys for Defendants

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 29

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

3341900v1/014399

Seattle City Attorney's Office
600 – 4th Avenue, 4th Floor
P.O. Box 94769
Seattle, WA  98124-4769
Phone: (206) 684-8233 – Gregory C. Narver
Phone: (206) 733-9318 – Gary T. Smith
Phone: (206) 684-8224 – John B. Schochet
Fax: (206) 684-8284
E-mail: gregory.narver@seattle.gov
E-mail: gary.smith@seattle.gov
E-mail: john.schochet@seattle.gov


SUSMAN GODFREY, LLP

By:     /s/ Parker C. Folse, III
        WSBA #24895
        /s/Edgar G. Sargent
        WSBA #28283
        /s/Justin A. Nelson
        WSBA #31864
        /s/Drew D. Hansen
        WSBA #30467
        1201 Third Avenue, Suite 3800
        Seattle, WA  98101-3000
        Phone: (206) 516-3860 – Parker C. Folse, III
        Phone: (206) 516-3895 – Edgar G. Sargent
        Phone:  (206) 516-3867 – Justin A. Nelson
        Phone: (206) 373-7384 – Drew D. Hansen
        Fax: (206) 516-3883
        Email: pfolse@susmangodfrey.com
        Email: esargent@susmangodfrey.com
        Email: jnelson@susmangodfrey.com
        Email: dhansen@susmangodfrey.com

        Attorneys for Defendants

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 30

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

### CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2014, I electronically filed this

Response To Plaintiffs' Motion For A Limited Preliminary Injunction with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the below-listed:

Paul D. Clement                      pclmement@bancroftpllc.com
Viet D. Dinh                         vdinh@bancroftpllc.com
H. Christopher Bartolomucci          cbartolomucci@bancroftpllc.com
D. Zachary Hudson                    zhudson@bancroftpllc.com
William R. Levi                      wlevi@bancroftpllc.com

David J. Groesbeck                   david@groesbecklaw.com

DATED this 29th day of September, 2014, at Seattle, Washington.

By:    /s/Edgar Sargent
       Edgar Sargent, WSBA #28283
       esargent@susmangodfrey.com

OPPOSITION TO
PRELIMINARY INJUNCTION (14-cv-00848) - 31

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

3341900v1/014399