1                                          Honorable Richard A. Jones

2

3

4

5

6

7

8

9

10              **UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
11                        **AT SEATTLE**

12  ———————————————————— )

13  INTERNATIONAL FRANCHISE     )
ASSOCIATION, INC., *et al.*,       )
14                              )    No.  C14-848RAJ
15          *Plaintiffs*,        )
16      v.                  )    **PLAINTIFFS' REPLY IN SUPPORT OF**
                              )    **MOTION FOR A LIMITED**
17                              )    **PRELIMINARY INJUNCTION**
18  CITY OF SEATTLE, *et al.*,       )
                              )    **(NOTING DATE:  OCTOBER 10, 2014)**
19          *Defendants*.       )

20  ———————————————————— )

21

22

23

24

25

26

27

28

29

30

31

32

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

# TABLE OF CONTENTS

I.   Introduction ........................................................................................................ 1

II.   Plaintiffs Are Highly Likely to Prevail on the Merits ...................................... 1

    A.   The Ordinance Impermissibly Discriminates Against Interstate Commerce. ........... 1

        B.   The Ordinance Violates the Equal Protection Clause. ...................................... 7

        C.   The Ordinance Violates the First Amendment. ................................................. 9

        D.   The Ordinance Is Preempted by the Lanham Act. .......................................... 10

        E.   The Ordinance Is Preempted by ERISA. ........................................................ 11

        F.   The Ordinance Violates Article I, Section 12 of the Washington Constitution. ......................................................................................................... 12

    III.   Plaintiffs Will Suffer Irreparable Harm Without a Preliminary Injunction. ............. 14

    IV.   The Balance of Equities and Public Interest Support Injunctive Relief. ................. 14

    V.   Seattle Has No Response to the Serious Questions Test. .......................................... 15

VI.   Conclusion ........................................................................................................ 15

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

i

1

## TABLE OF AUTHORITIES

2

**Cases**

3

4
*Aetna Health Inc. v. Davila,*
542 U.S. 200 (2004) ......................................................................................... 12

5

6
*Alliance for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ......................................................................... 15

7

8
*Am. Legion Post #149 v. Wash. State Dep't of Health,*
164 Wn.2d 570 (2008) ............................................................................... 12, 13

9

10
*Associated Press v. NLRB,*
301 U.S. 103 (1937) ......................................................................................... 10

11

12
*Bankers Life & Cas. Co. v. Crenshaw,*
486 U.S. 71 (1988) ............................................................................................. 7

13

14
*Cachia v. Islamorada,*
542 F.3d 839 (11th Cir. 2008) ....................................................................... 4, 5

15

16
*Conservation Force, Inc. v. Manning,*
301 F.3d 985 (9th Cir. 2002) ............................................................................. 4

17

18
*Crosby v. Nat'l Foreign Trade Council,*
530 U.S. 363 (2000) ......................................................................................... 11

19

20
*Exxon Corp. v. Governor of Maryland,*
437 U.S. 117 (1977) ........................................................................................... 5

21

22
*Family Winemakers of Cal. v. Jenkins,*
592 F.3d 1 (1st Cir. 2010) ................................................................................. 6

23

24
*Friedman v. Rogers,*
440 U.S. 1 (1979) ............................................................................................... 9

25

26
*Golden Door, Inc. v. Odisho,*
646 F.2d 347 (9th Cir. 1980) ........................................................................... 11

27

28
*Granholm v. Heald,*
544 U.S. 460 (2005) ........................................................................................... 6

29

30
*Griffin v. Eller,*
130 Wn.2d 58 (1996) ....................................................................................... 14

31

32

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

*Island Silver & Spice, Inc. v. Islamorada*,
  542 F.3d 844 (11th Cir. 2008) ................................................................. 5

*Mister Donut of Am., Inc. v. Mr. Donut, Inc.*,
  418 F.2d 838 (9th Cir. 1969) .................................................................. 11

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*,
  567 F.3d 521 (9th Cir. 2009) .................................................................. 4

*Ockletree v. Franciscan Health Sys.*,
  179 Wn.2d 769 (2014) ........................................................................... 12

*Oklahoma Press Publ'g Co. v. Walling*,
  327 U.S. 186 (1946) ............................................................................... 10

*Pharm. Research & Mfrs. of Am. v. Cnty. of Alameda*,
  2014 WL 4814407 (9th Cir. Sept. 30, 2014) ....................................... 2, 4

*Ralph v. City of Wenatchee*,
  32 Wn.2d 638 (1949) ............................................................................. 13

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) ............................................................................... 10

*Rocky Mountain Farmers Union v. Corey*,
  730 F.3d 1070 (9th Cir. 2013) ................................................................ 4

*Vill. of Willbrook v. Olech*,
  528 U.S. 562 (2000) ................................................................................. 8

*W. Lynn Creamery, Inc. v. Healy*,
  512 U.S. 186 (1994) ............................................................................. 2, 3

**Statutes**

15 U.S.C. § 1127 ....................................................................................... 11

Seattle City Ordinance No. 124490 (June 3, 2014) .................................. 3

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

**I.      Introduction**

Seattle's opposition to Plaintiffs' request for a limited injunction is based on a fundamental misunderstanding of the constitutional and statutory provisions at issue.  Contrary to longstanding Commerce Clause principles, the city asserts that laws that target out-of-state businesses for unfavorable treatment are unobjectionable.  Seattle contends that if there is *any* noticeable difference between *any* franchise and non-franchise business, it has carte blanche to ignore bedrock commerce clause and equal protection principles and treat franchised businesses however it likes.  That argument is wrong and ignores the ordinance's provisions that more specifically address the very factors Seattle suggests justify the differential treatment.  The city suggests that its blatant discrimination against federal trademark and protected commercial speech and association must be upheld lest all business regulation meet a similar fate.  But that argument ignores the unprecedented nature of the ordinance's penalties for those who employ trademarks or associate with franchisors.  Most glaringly, Seattle fails to even acknowledge that, under Ninth Circuit precedent, the presence of serious questions regarding a law's validity can warrant an injunction.  The questions raised by this unprecedented and discriminatory law are serious indeed. A preliminary injunction of its discriminatory treatment should issue.

**II.     Plaintiffs Are Highly Likely to Prevail on the Merits.**

**A.      The Ordinance Impermissibly Discriminates Against Interstate Commerce.**

The ordinance violates the Commerce Clause because it discriminates against interstate commerce in both purpose and effect.  Statements made by public officials pre- and post-enactment make plain that among its purposes was the forbidden desire to protect non-franchise local Seattle businesses.  And the discriminatory effect of the ordinance is clear: small franchise businesses operating in Seattle are treated more harshly than purely local small businesses because of the

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

franchisees' association with out-of-state commercial entities and interstate franchise networks. Every single franchise business operating in Seattle is associated with an out-of-state franchisor, an interstate franchise network with franchisees outside the state, or both and, as result, will have to pay a substantially higher minimum wage as compared to their local competitors.  This is tantamount to a forbidden tax on out-of-state economic affiliations and a "paradigmatic example of a law discriminating against interstate commerce."  *W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 193 (1994); *see Pharm. Research & Mfrs. of Am. v. Cnty. of Alameda*, 2014 WL 4814407 at *3 (9th Cir. Sept. 30, 2014) ("Tariff-like statutes … provide distinct advantages to in-state entities over out-of-state entities, so courts routinely strike them down.").

Seattle's halfhearted efforts to rehabilitate the public record come nowhere close to neutralizing past statements laying bare the ordinance's discriminatory purpose.  IIAC member Nick Hanauer left no room for doubt that the ordinance aimed to create a "city dominated by independent, locally owned" retailers, and eliminate "national chains," which "are not very good for [the] local economy."  Groesbeck Decl. Ex. 2 (Dkt. # 38); Second Groesbeck Decl. Ex. 1 (Dkt. # 81).  Mayor Murray cited franchisees' relationships with "a corporate national entity" as the reason for treating them less favorably than a "local" business; openly attacked the inherently interstate "franchise business model" as a "problem"; and told franchisees to speak "with their corporate parents"—almost all of which are out-of-state—if they could not bear the "economic strain" of the accelerated wage increase.  Groesbeck Decl. Ex. 16.  Councilmember O'Brien hoped the ordinance's treatment of franchisees would "force" their "parent companies" to prop them up. Second Groesbeck Decl. Ex. 2.  In the same vein, Councilmember Sawant advised franchise owners not to complain to the Seattle Council but to "go to CorpHQ."  Groesbeck Decl. Ex. 15.

Tellingly, rather than offer declarations by Mr. Hanauer, Mayor Murray, or any

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

Councilmember that might shed some light on their misguided comments, and despite ample time to secure such declarations, the city provides only the musings of Robert Feldstein.  He reports that the ordinance's treatment of franchisees "was not based on a franchisor's participation in business across state lines" and suggests that statements to the contrary reflect only the nature of the process involved in making a "controversial political decision."  Feldstein Decl. ¶¶17-18 (Dkt. # 63).  Of course, the nature of the process, and whether it had a discriminatory purpose, is the crux of the issue, and the contemporaneous comments of Mr. Hanauer, Mayor Murray, Councilmembers Sawant and O'Brien (and even Mr. Feldstein's own pre-enactment recognition that the ordinance aims to make "franchises in Seattle" "a casualty of this transition" (Groesbeck Decl. Ex. 3)) are far more revealing than any after-the-fact explanation.  Moreover, "controversial political decision[s]" are made every day without reference to eradicating interstate business models or protecting locals.  "Preservation of local industry by protecting it from the rigors of interstate competition is the hallmark of the economic protectionism that the Commerce Clause prohibits," *W. Lynn Creamery*, 512 U.S. at 205, and these statements by Mr. Feldstein and others— not to mention the ordinance's own recognition that "small businesses … may have difficulty in accommodating the increased costs," Ordinance § 1 ¶4 (Groesbeck Decl. Ex. 1), imposed by the ordinance coupled with the imposition of those costs on small businesses tied to interstate franchise networks—establish that protectionism was one of the ordinance's primary aims.

Seattle's arguments regarding the ordinance's indisputably discriminatory effects are similarly misguided.  Seattle first argues that "[e]ven a showing that one-hundred percent of the impact of state legislation will be sustained by out-of-state businesses" would not establish a Commerce Clause violation.  Opp. 8-9 (Dkt. # 61).  Seattle is mistaken.  As the Ninth Circuit recently reaffirmed, laws that "'impose[] commercial barriers or discriminate[] against an article

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

3

of commerce by reason of its origin or destination out of State'"—without more—"'violate[] the Commerce Clause per se'" and must be struck "'down without further inquiry.'" *Pharm. Research & Mfrs. of Am.*, 2014 WL 4814407 at *2. Seattle's hypothetical 100% law, which is only a few percentages points off from the one it actually enacted, would be invalid under longstanding Commerce Clause precedent.

Seattle's cases are not to the contrary. *National Association of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521 (9th Cir. 2009), recognizes that laws that have "'a substantial effect' on interstate commerce"—as a city ordinance with only (or even predominantly) out-of-state effects surely would—raise serious Commerce Clause concerns. *Id.* at 524 (quoting *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 993 (9th Cir. 2002)); *see* Opp. 10. And *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070 (9th Cir. 2013), unequivocally states that "[i]f a statute discriminates against out-of-state entities on its face, in its purpose, or in its practical effect, it is unconstitutional unless it" can survive strict scrutiny. *Id.* at 1087; *see* Opp. 10.

Seattle suggests that whatever problems there might be with a law that exclusively burdened out-of-state businesses and interstate commerce, those concerns are absent here given that only "96% of the franchises operating in Seattle are affiliated with an out-of-state franchisor." Opp. 8. But simply catching one or two in-state businesses in a discriminatory web does not save the law, as the Eleventh Circuit's decision in *Cachia v. Islamorada*, 542 F.3d 839 (11th Cir. 2008), illustrates. *Cachia* involved a challenge to a law restricting the development of "formula restaurants," which were defined as those using "the same or similar name, trade name, or trademark as other[]" restaurants. *Id.* at 841. The court held that the ordinance could violate the Commerce Clause even though it burdened both out-of-state restaurants and "formula restaurants that originate from within the state of Florida." *Id.* at 842. Although the city's regulation burdened

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

4

a handful of in-state businesses, "the regulation serve[d] as an explicit barrier to the presence of national chain restaurants, thus preventing the entry of such businesses into competition with independent local restaurants." *Id.* Discrimination against franchise or formula businesses, which by definition are not purely local enterprises, is discrimination against interstate commerce or protectionism of purely local businesses. *See also Island Silver & Spice, Inc. v. Islamorada*, 542 F.3d 844, 846-47 (11th Cir. 2008) (invalidating ordinance imposing size limitations on "formula retail" establishments on Commerce Clause grounds). The ordinance's text alone makes that protectionism plain, and the contemporaneous statements of its sponsors removes all doubt.

*Cachia* also critically undermines Seattle's efforts to rely on *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1977). *See* Opp. 9. *Cachia* roundly rejected the city's reliance on *Exxon*'s statement that the Commerce Clause does not "'protect[] the particular structure of methods of operation in a retail market'" in support of the formula restaurant law. Opp. 9 (quoting *Exxon*, 437 U.S. at 127-28). As the *Cachia* court explained, the ordinance's treatment of "chain restaurants sharing certain characteristics amounts to more than the regulation of methods of operation, and serves to exclude national chain restaurants from competition in the local market." 542 F.3d at 843. The ordinance's adverse treatment "of restaurants operating under the same name, trademark, menu, or style is not evenhanded in effect, and disproportionately targets restaurants operating in interstate commerce." *Id.* So it is here. *Exxon* does not aid Seattle.

Seattle also argues that "[n]othing in the Ordinance so much as mentions the geographic location of businesses," and that, "[i]nstead of geography, the focus of the Ordinance is economic wherewithal and the desire to allow smaller businesses with fewer resources a longer phase-in period for the $15 minimum wage." Opp. 10-11. The city's argument on this score, however, is based on three faulty premises. First, as Seattle must know, the ordinance need not expressly

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

reference geography in order to trigger heightened scrutiny under the Commerce Clause.  Proxies for non-local businesses, like formula, franchise or even small are enough.  *See Family Winemakers of Cal. v. Jenkins*, 592 F.3d 1 (1st Cir. 2010) (invalidating under Commerce Clause state law giving disparate regulatory treatment to "large" and "small" wineries).  Second, the ordinance does not "focus" on the "economic wherewithal" of Seattle businesses as related to their ability to absorb the minimum wage.  Opp. 10-11.  The offending provisions of the ordinance focus on a specific business model, which has no necessary connection to a business's ability to pay a heightened minimum wage.  If the law were concerned with the "economic wherewithal," it could have drawn lines based on a business's revenue or profits or dozens of rational proxies for wherewithal.  Seattle suggests that franchise businesses are better able to sustain higher wages because they can draw on the resources of other franchisees.  But that ignores both the corporate separateness of the franchisees, and that the ordinance has a specific provision that combines separate businesses when they have common management and other factors that justify combined treatment.  That more targeted provision renders the automatic combination of all franchisees— no matter how distinct—that much less defensible.  Third, and relatedly, if what the ordinance was truly concerned with was "allow[ing] smaller businesses with fewer resources" more time to "phase-in" the minimum wage law, Opp. 11, it would not have opted to treat truly small franchise businesses like AlphaGraphics and BrightStar the same as Boeing and other Washington corporate behemoths.  Seattle's only other argument in opposition to Plaintiffs' Commerce Clause claim is that "courts must give substantial deference to the regulatory authority of state and local governments."  Opp. 7.  But deference is reserved for laws without a protectionist purpose or effect, and Seattle's has both.  Such laws "face 'a virtually *per se* rule of invalidity.'"  *Granholm v. Heald*, 544 U.S. 460, 476 (2005).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

6

**B.      The Ordinance Violates the Equal Protection Clause.**

Under the Equal Protection Clause, classifications that are arbitrary or motivated by animus fail "under even [the] most deferential standard of review." *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 83 (1988).  The ordinance fails to treat businesses that are identical with respect to their ability to pay an increased minimum wage alike, treats businesses that bear no resemblance to each other with respect to wage-paying ability as identical, and does so based on an irrational disdain for small franchised businesses.

Seattle marches through various benefits that Plaintiffs accrue from their association with interstate franchise networks and then asserts that "these benefits provide franchises with substantial advantages over purely local small businesses" that "provide a rational basis for the Ordinance's classification of franchises."  Opp. 15.  There are several problems with that submission.  First, trying to re-level the playing field to favor "purely local small businesses" is not a rational basis, but a commerce clause violation.  *See supra*.  Second, to the extent some businesses gain special advantages from their close association with other businesses, the ordinance already has a neutral rule for when two nominally separate businesses should be combined.  Applying a per se rule to all franchisees, rather than that targeted multi-factored test, flunks rational basis review.  It is telling that although Plaintiffs emphasized this provision, Seattle ignores it.  Finally, Seattle ignores that the critical question for purposes of Plaintiffs' equal protection claim is whether there is a rational basis "for treating small franchisees and their similarly situated non-franchised competitors differently when it comes to the minimum wage those businesses must pay."  PI Mot. 18 (Dkt. # 37).  In other words, if the differences between small franchise businesses and non-franchise businesses are unrelated to an ability to absorb the burdens of an increased minimum wage, Seattle's classification is unconstitutional.  *See Vill. of*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

*Willbrook v. Olech*, 528 U.S. 562, 564 (2000) (laws that "intentionally" treat "similarly situated" entities "differently" are invalid if "there is no rational basis for the difference in treatment"). Seattle leaves this critical question unaddressed.

The closest Seattle comes to taking on the issue is to highlight certain benefits to franchising: "national advertising, extremely valuable and well-known trademarks, [and] the market power of a large corporation when purchasing supplies and raw materials." Opp. 15.  The city apparently thinks that these "substantial advantages" justify the disparate treatment of small franchise businesses.  *Id.*  But Seattle ignores several factors.  First, to the extent that Seattle seeks to counterbalance the benefits of national advertising and well-known trademarks, it creates First Amendment and preemption problems.  Second, its blanket discrimination against all franchisees lumps AlphaGraphics and BrightStar Care together with "McDonalds."  A law targeting only McDonald's and other businesses of national prominence would suffer its own flaws, but Seattle did not even try to identify factors that might justify a faster phase-in for certain franchisees.  As noted, the closest it came to articulating neutral factors for combining some separate businesses came in a provision that is inapplicable to franchisees, which are subject to a one-size-fits-all approach.  Third, the benefits Seattle points to did not come free.  As Seattle and its expert recognize, franchisees pay franchisors "fees and royalties" in order to secure the benefits of a franchise relationship.  Opp. 20; Shane Decl. ¶ 20 (Dkt. # 62).  As a result, and in keeping with fundamental principles of economic efficiency, franchisees get only what they pay for—no more and (hopefully) no less.  Seattle's expert agrees that franchisors charge fees to their franchisees "roughly commensurate" with the benefits provided to the franchisees.  Second Groesbeck Decl. Ex. 4 (Shane Dep. 128-31).  He agrees that owning a franchise business "is no safer on average than independent business ownership, and in some cases is actually more risky." *Id.* (Shane Dep.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

60-63). He also confirmed that franchisees and franchisors are wholly separate legal entities, and that a franchisee's employees are not the franchisor's employees. *Id.* (Shane Dep. 53-59, 136-37).

The animus against franchises that yielded the ordinance's offending provisions is established by the public record and further underscores Plaintiffs' likelihood of success on their equal protection claim. Nick Hanauer explained that one of the aims of the ordinance was to decrease the number of franchises operating in Seattle and that eradicating franchises from the Seattle business landscape was desirable because franchises are "economically extractive, civically corrosive and culturally dilutive." Groesbeck Decl. Ex. 2. IIAC member David Meinert reported that the ordinance was intended to "break[] the franchise model." *Id.* Ex. 5. *See* Second Groesbeck Decl. Ex. 3 (e-mail from Howard Behar backing Meinert). Indeed, IIAC co-chair (and local SEIU head) David Rolf told Mr. Meinert several times that the goal was to "break the franchise model." Meinert Decl. ¶ 4 (Dkt. # 37 Ex. 2). The Mayor himself indicated that discrimination against franchises was necessary to secure SEIU's approval. *See* Heyl Decl. ¶ 8 (Dkt. # 37 Ex. 3). Seattle contends these statements are merely "reflect[ive]" of "a policy battle between labor representatives and certain business interests." Opp. 18. But the comments themselves make clear that they are much more than run-of-the-mill political banter, and Seattle has not offered declarations by any of the statements' makers even attempting to establish otherwise.

### C.     The Ordinance Violates the First Amendment.

Seattle concedes, as it must, that the ordinance's differential wage implementation turns on a small Seattle business's use of trademarks, national advertising and commercial associations. Opp. 20. That effectively concedes the need for First Amendment scrutiny. Imposing burdens on an entity because of its use of trade names—which "are a vital form of commercial speech," *Friedman v. Rogers*, 440 U.S. 1, 22 n.3 (1979) (Blackmun, J., concurring and dissenting)—

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

national advertising and its commercial associations—which are unequivocally protected, *see Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)—clearly implicates the First Amendment.

Seattle cites cases establishing that "laws of general application that might indirectly impact" speech are unproblematic. Opp. 19 (citing *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 192-93 (1946) (a newspaper can be subject to the FLSA); *Associated Press v. NLRB*, 301 U.S. 103, 132-33 (1937) (a newspaper organization can be subject to the NLRA). But this is not a law of general applicability. What gets a franchisee eligible for disfavorable treatment is not some factor unrelated to speech. Disfavorable treatment comes when a franchisee employs trademarks, benefits from national advertising and associates with others under a common banner, which are all First Amendment activity. Thus, cases concluding that "laws of general application that might indirectly impact" speech provide no aid to Seattle.

Seattle also trots out a parade of horribles, contending that if the ordinance's imposition of wage penalties based on commercial speech and association is unconstitutional, then so are other sorts of laws. But the cases just discussed demonstrate that courts can distinguish between laws of general applicability that have an indirect effect on speech and laws that impose negative consequences on those who engage in First Amendment activity. And even as to the latter laws, First Amendment scrutiny is not always fatal in fact. That Seattle's effort to single out those who employ trademarks and enjoy national advertising campaigns for unfavorable treatment in an avowed effort to level the playing field flunks any meaningful First Amendment scrutiny does not mean that other laws would suffer the same fate.

## D. The Ordinance Is Preempted by the Lanham Act.

The ordinance expressly discriminates against franchisees and franchisors who exercise their federally protected rights to obtain and utilize trademarks. Consistent with the Lanham Act

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

and its express purpose "to protect registered marks used in … commerce from interference by State" legislation, 15 U.S.C. § 1127, state and municipal laws that disfavor a class of employers defined in significant part by their use of a shared trademark are invalid.  *See Golden Door, Inc. v. Odisho*, 646 F.2d 347, 352 (9th Cir. 1980) (laws that conflict with "the Lanham Act" are "invalid"); *Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 844 (9th Cir. 1969) ("The Lanham Act has pre-empted the field of trademark law and controls.").

Seattle does not engage Plaintiffs on the merits of this argument.  Indeed, the city complains that Plaintiffs cannot cite a precedent on all fours.  Opp. 21.  But municipalities trumpeting unprecedented legislation cannot benefit from the absence of precedent.  There is no first mover advantage when it comes to violating the Constitution.  In fact, it is Seattle that does not cite a single Lanham Act preemption precedent in its brief.  Plaintiffs invoked a number of Lanham Act cases that, consistent with general preemption principles, displace state laws that frustrate the objectives of the federal scheme.  It is hard to imagine a greater obstacle to the federal policy favoring trademarks than a local law employing the use of a trademark as the basis for disfavorable treatment.  Courts routinely invalidate less direct affronts to the supremacy of federal law.  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (preemption analysis is "informed by examining the federal statute as a whole and identifying its purpose and intended effects").

### E.      The Ordinance Is Preempted by ERISA.

The ordinance provides especially favorable treatment to certain large employers that offer health plans Seattle favors, which exacerbates the unlawful discrimination against small franchise employers.  Small franchise businesses are not in a position to take advantage of the special treatment for employers who offer a federal gold or silver plan.  *See* PI Mot. 25.  Thus, not only will small franchise employers be treated the same as vastly larger employers, they will actually

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

be treated worse than large employers that offer a federal gold or silver plan.

Seattle has only two responses to the ordinance's fatal ERISA problems. First, the city states that the ordinance's ERISA problems are irrelevant "because the provisions related to health plans are not among those that" Plaintiffs seek to enjoin. Opp. 22. As just described, however, the ordinance's ERISA-barred provisions are inextricably intertwined with the ordinance's unconstitutional mistreatment of small franchise businesses and provide additional support for granting the requested relief. Second, Seattle contends that Plaintiffs' ERISA argument "relies on pre-*Travelers* cases … and so assumes an overly-broad field of preemption." Opp. 23. But the very first case cited in the ERISA preemption section of Plaintiffs' moving papers is *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), which unequivocally states that "ERISA includes expansive pre-emption provisions … which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern,'" *id.* at 208, and is a "post-*Travelers*" case.

**F.    The Ordinance Violates Article I, Section 12 of the Washington Constitution.**

Article I, Section 12 bans "governmental favoritism toward certain business interests," *Ockletree v. Franciscan Health Sys.*, 179 Wn.2d 769, 782 (2014), and "is violated if a statute treats two businesses that are" similarly situated "differently," *Am. Legion Post #149 v. Wash. State Dep't of Health*, 164 Wn.2d 570, 607 (2008). The ordinance indisputably favors non-franchise businesses over franchise businesses and treats differently businesses that are similarly situated in terms of their ability to pay an increased wage. The city wrongly asserts that no privilege is implicated here because "the minimum wage is a creation of the legislature and so any related rights do not exist independently." Opp. 26. But the cases on which Seattle relies make clear that "an exemption from a regulatory law that has the effect of benefiting certain businesses at the expense of others" is a "'privilege.'" *Am. Legion,* 164 Wn.2d at 607.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

Next, Seattle mistakenly claims that the fundamental right to "carry on business," PI Mot. 26-27, is violated only when a business is prohibited from operating altogether, Opp. 26. That may, in fact, be the consequence of the ordinance for many Seattle franchisees—the increased costs vis-à-vis their competitors may very well drive them out of business. In all events, the city's limited view of the right to "carry on business" is irreconcilable with Washington precedent, as *Ralph v. City of Wenatchee*, 32 Wn.2d 638 (1949), demonstrates. *Ralph* held that "a municipal ordinance requiring licenses for nonresident photographers, but not residents, violated article I, section 12." *Am. Legion*, 64 Wn.2d at 607-08. "The court reasoned that when the State's police power is manipulated to serve [some] private interests at the expense of" others, the "legislation must be condemned as unreasonable and unlawful." *Ralph,* 32 Wn.2d at 644. The impermissibility of the ordinance's disparate treatment of small businesses that are similarly situated and operating within the same city follows directly from *Ralph*. If a municipality cannot distinguish between residents and nonresidents in terms of licensing requirements consistent with the Washington Constitution, then it surely cannot force some businesses within a municipality, but not others identically situated in all material respects, to pay a higher minimum wage.

Finally, Seattle parrots its equal protection argument and asserts that it is okay to treat small franchise businesses differently from their non-franchise competitors. As discussed *supra*, there is no basis for concluding that small franchise businesses are better able to pay an increased wage than their competitors. Moreover, the "privileges and immunities clause warrants a separate" and more demanding "constitutional analysis" relative to the federal Equal Protection Clause. *Am. Legion*, 164 Wn.2d at 606. The cases demand a "'real and substantial difference[] bearing a natural, reasonable, and just relation to the subject matter of the act'" and that is lacking here. *Id*. While the Washington Supreme Court has upheld laws differentiating between large and small

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

employers against Article I, Section 12 challenges in some instances, *see*, *e.g.*, *Griffin v. Eller*, 130 Wn.2d 58 (1996), it has never signed off on a law that draws such a distinction and then bizarrely treats a small employer as a large employer. The ordinance does just that and cannot survive analysis under either the U.S. or Washington Constitution.

**III.     Plaintiffs Will Suffer Irreparable Harm Without a Preliminary Injunction.**

The deprivation of constitutional rights, competitive injury, loss of customers, loss of goodwill, and the potential of being forced out of the market that all flow from the ordinance constitute irreparable harm. PI Mot. 27-29. Seattle's primary counterargument—that the actual impact of the ordinance on Plaintiffs "might be positive"—is the ultimate expression of paternalism. Opp. 28. It could be that compelling Plaintiffs to pay more than their similarly situated local competitors will unlock hidden value. Of course, if that happens, it would entirely contradict the city's stated goal of counterbalancing the benefits of trademarks and national advertising (not to mention reserving Seattle for local businesses) since franchisees will now enjoy all that and the benefit of attracting the very best employees with their compelled higher wages. In all events, rest assured that the injunction will allow all employers, including small local stores, to pay more than the minimum wage when that is economically beneficial. At the same time, it will eliminate the substantial and irreparable injury suffered by small franchisees who cannot afford to compete with local businesses who are free to pay their workers less. *See* Second Groesbeck Decl. Exs. 5, 6, 7 (excerpts of depositions of Plaintiffs Lyons, Oh, and Stempler).

**IV.     The Balance of Equities and Public Interest Support Injunctive Relief.**

Seattle makes no effort to distinguish the precedent cited by Plaintiffs establishing that the balance of equities and public interest support granting the limited injunctive relief requested. *Compare* PI Mot. 29-30 with Opp. 28-29. Instead, the city asserts that the balance of equities tips

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

14

against Plaintiffs because some Seattle workers will not benefit from the wage increase and that an injunction is contrary to the public interest because this ordinance was enacted with "support from the community." Granting Plaintiffs the relief they seek does not mean that the employees of small franchise businesses will be robbed of a higher minimum wage; the result will simply be that those workers are paid the exact same minimum wage as employees who do the exact same job for small non-franchise businesses. That (fair and just) outcome hardly tips the scales in the city's favor. If the city is right that the public interest counsels against an injunction here because the ordinance was enacted with the support of the electorate, the public interest factor would never cut in favor of a party seeking equitable relief from enforcement of a statute. That is not the law. This factor too strongly favors Plaintiffs, especially given the limited relief sought.

**V.     Seattle Has No Response to the Serious Questions Test.**

The traditional four-factor test for a preliminary injunction is easily met in this case, but—at a minimum—there are "serious questions going to the merits" that require preliminary relief. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Seattle completely fails to respond to Plaintiffs' reliance on the Ninth Circuit's "serious questions" test. *See* PI Mot. 3, 12, 30. The ordinance's unprecedented treatment of small franchise businesses clearly raises serious questions. The statements of Mayor Murray, Mr. Hanauer, Mr. Rolf, and Councilmembers Sawant and O'Brien, combined with Seattle's failure to submit any declarations from them, raise serious questions as to whether the ordinance's discriminatory treatment of small franchisees was motivated by economic protectionism, animus, and a desire to "break" the franchise model.

**VI.     CONCLUSION**

Plaintiffs' motion for a limited preliminary injunction requiring that all small businesses be treated the same under the minimum wage ordinance should be granted.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

Respectfully submitted,

/s Paul D. Clement
Paul D. Clement*
Viet D. Dinh*
H. Christopher Bartolomucci*
BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090
pclement@bancroftpllc.com
vdinh@bancroftpllc.com
cbartolomucci@bancroftpllc.com
* Admitted *pro hac vice*

/s David J. Groesbeck
David J. Groesbeck, WSBA No. 24749
DAVID J. GROESBECK, P.S.
1716 Sylvester St. SW
Olympia, WA  98501
 (360) 358-3224

313 W. Riverside Ave.
Spokane, WA 99201
(509) 747-2800
david@groesbecklaw.com

*Counsel for Plaintiffs*
*The International Franchise Association, Inc.,*
*Charles Stempler, Katherine Lyons, Mark*
*Lyons, Michael Park, and Ronald Oh*

Dated:  October 10, 2014

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090

### CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of October, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Gregory C. Narver            gregory.narver@seattle.gov

Gary T. Smith                gary.smith@seattle.gov

John B. Schochet             john.schochet@seattle.gov

Parker C. Folse, III         pfolse@susmangodfrey.com

Edgar G. Sargent             esargent@susmangodfrey.com

Justin A. Nelson             jnelson@susmangodfrey.com

Drew D. Hansen               dhansen@susmangodfrey.com

Paul D. Clement              pclmement@bancroftpllc.com

Viet D. Dinh                 vdinh@bancroftpllc.com

David J. Groesbeck           david@groesbecklaw.com

s/ H. Christopher Bartolomucci
H. Christopher Bartolomucci
BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090
cbartolomucci@bancroftpllc.com

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR A LIMITED PRELIMINARY INJUNCTION
(C14-848RAJ)

BANCROFT PLLC
1919 M Street, NW, Suite 470
Washington, DC 20036
(202) 234-0090